BARRY, Judge.
The defendant was convicted of armed robbery. La.R.S. 14:64. He was sentenced to eight years at hard labor without benefit of parole, probation or suspension of sentence and required to pay $80 in court costs or serve an additional thirty days in default of payment.
The victim, Wade .Vincent, testified that on the night of December 27, 1983, he picked up a friend, Barry Alfortish, in his Cadillac (in which he kept a .357 magnum for protection) and went to Ruthie’s (called the Wishing Well at the time) for drinks. About 9:00 p.m. David McFarland and Kevin Marse, strangers to Vincent, sat down beside him and started talking. About 10:30 p.m. the four men left with an off-duty barmaid Vincent knew and went to Gatsby’s lounge. From there they drove Alfortish home, ate pizza, and returned to Gatsby’s. Vincent said he had about six drinks.
Kevin Marse testified he and McFarland accompanied Vincent when he drove Alfortish home. During the ride Alfortish took Vincent’s gun from somewhere under the seat. When told to put it away, he placed it in the glove compartment. Marse drank 10-12 beers during the night. He said he met the defendant momentarily and remained at the lounge when the others left.
After they returned to Gatsby’s McFarland[1] testified he introduced Marse and Vincent to the defendant who was buying everyone drinks and paying with hundred dollar bills. Vincent and McFarland invited the defendant to go to the French Quarter and the three left in Vincent’s car. The defendant said he had cocaine, and when Vincent stopped the car the defendant *146 grabbed him around the neck from the back seat. McFarland, in the front seat, struck Vinfeent several times in the face (in partial retaliation for earlier homosexual advances). McFarland took the gun from the glove compartment and gave it to the defendant who held it to Vincent’s head and threatened to kill him. Vincent was told to surrender his wallet and McFarland took the money.
Vincent testified the defendant told him to get ready to die and McFarland told him his only chance was to run. They let him go and Vincent walked away hurriedly (a leg injury prevented running) until he heard a noise and saw his car in a ditch. He went around the block and called the police from a food store.
McFarland stated that after the car went into the ditch, he and the defendant started walking. McFarland took off, was arrested and Vincent was brought to identify him. McFarland gave the police the defendant’s name, address, and phone number.
Vincent identified the defendant in a photo lineup and in the courtroom. So did Kevin Marse. Vincent testified he was not certain if the defendant had a mustache but was positive the defendant was the culprit.
The defendant testified that he was in LaPlace on the night of the crime. He was with his girlfriend, Glenda Silva. Her brother, Mike, testified that the defendant and Glenda were in a LaPlace bar watching his band play the night of December 27, 1983 and the early morning hours. Afterward they went to the Silva house about 2:30 a.m. and watched television until around dawn. The defendant similarly testified.
Glenda’s sister, Cheryl, testified that Mike, Glenda and the defendant went to the lounge to hear the band. She stated the defendant did not have a mustache at that time and pictures she had taken on Christmas Eve, 1983 were introduced.
The defendant’s mother, Marlene LaNa-sa, testified she remembered that her son stayed overnight December 27-28, 1983 at the Silva home. She called him around 9:00 p.m. to see if he intended to sleep there. The telephone bill which shows the call was introduced.
The defendant denied the robbery. He stated he knew McFarland mainly from high school and had seen him only a couple of times since 1979.
The defendant assigns five errors: (1) not granting a mistrial based on the prosecutor’s reference to other crimes evidence in his opening statement; (2) not granting a mistrial when the prosecutor made a prejudicial comment on the evidence in his closing rebuttal argument; (3) denial of his request for the initial police report; (4) denial of his motion for a new trial; (5) imposition of an unconstitutionally excessive sentence.
MOTIONS FOR MISTRIALS
In assignment # 1, the defendant claims a mistrial was warranted because during the prosecutor’s opening statement he said:
They left and were headed out Behrman Highway and you are going to hear testimony that the reason they were going out there is that they were looking for a place to do, supposedly they were going to do some cocaine. Now, none was ever seen, the State’s not — none was recovered at the scene.
After a defense objection, both counsel approached the bench, then the prosecutor continued:
That that was the supposed reason that they were going out looking for some place off of Behrman Highway. They ended up turning around and heading back towards General DeGaulle.
At the end of the trial defense counsel urged his motion for mistrial which the court denied and stated:
The Court feels that under the circumstances all conversations in close proximity and in time while all three persons were allegedly together would constitute part of the res gestae and not evidence of other crimes. As such, in fact, if anything, it would be evidence of a crime by the victim. The Court feels it was res gestae.
*147 La.C.Cr.P. Art 770(2)[2] mandates a mistrial when the State makes a reference to another crime as to which evidence is not admissible.
Here the trial court found the evidence was res gestae under La.R.S. 15:447. To constitute res gestae the circumstances and declarations must be “necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction.” La.R.S. 15:448. Admission of other crimes evidence is allowed when it is related and intertwined so that the prosecution could not have accurately presented its case without reference ot it. State v. Haarala, 398 So.2d 1093 (La.1981).
The prosecutor’s statement about the cocaine bears upon the character of the victim as well as the defendant, but explains why the three men were driving in that area prior to the robbery. The alleged attempted drug use was an integral part of the events immediately preceding the crime and therefore admissible as res gestae. See State v. Edwards, 412 So.2d 1029 (La.1982).
We note McFarland’s testimony — that the defendant had cocaine and the three traveled that route to find a safe place to stop — was not objected to. Assignment # 1 lacks merit.
In assignment # 2 the defendant argues a mistrial was warranted because the prosecutor stated in closing rebuttal argument:
Well, if that’s the case then you have got to say, ‘Somebody out there is lying.’ Mr. Zainey [defense counsel] calls it mistaken. Not at all. You don’t take this witness stand and swear to the judge that what you are about to say is the truth and then get up here and say, ‘Well, maybe it’s that guy’. If he gets up here and says, ‘Maybe it’s him’, we don’t have a case, we don’t accept the case. That’s not a good identification. He tells you that that man right there is the man that put his arm around me and stuck the gun up to my head.
At that point defense counsel approached the bench and evidently moved for a mistrial which was not recorded. After the jury was charged and out of its presence counsel put his motion of record arguing that the above was a comment on the evidence. Counsel told the court the prosecutor had said that if the victim “was not sure of the identity we would not have accepted charges.” The court did not remember the State’s comment to that effect and stated the Assistant District Attorney had denied saying such at the bench conference. The court concluded:
So, in the absence of hearing such a comment I will deny the motion and had he said it, which I don’t recall hearing it, I still would not believe that it would be such a prejudicial statement that it would violate the defendant’s right to a fair trial.
Argument by counsel is confined to the evidence or its lack, to conclusions of fact drawn therefrom, and to applicable law. The State’s rebuttal is limited to answering the defense argument. La.C.Cr.P. Art. 774. Upon defendant’s motion a mistrial shall be ordered when prejudicial conduct in or outside the courtroom makes it impossible to obtain a fair trial. La.C.Cr.P. Art. 775.
A mistrial is a drastic remedy. Except in instances when it is mandatory, a mistrial is warranted only if substantial prejudice would result and deprive the defendant of a fair trial. The determination of unnecessary prejudice is within the trial court’s discretion and will not be disturbed absent abuse. State v. Harper, 430 So.2d 627 (La.1983), quoting from State v. Tribbet, 415 So.2d 182, 186 (La.1982).
*148 The defendant contends the State’s argument infers that when the State presents a case the defendant should be convicted, and that the Assistant District Attorney would not have brought the charge unless he felt the defendant was guilty. He argues the statement was a prejudicial allusion to facts outside the record which warranted a mistrial under La.C.Cr.P. Art. 775. We disagree.
The comment related to the victim’s positive identification of the defendant. Vincent testified that he had picked the defendant’s picture from a photo lineup (admitted into evidence) and pointed him out at trial. When read in context, the comment discussed the credibility of the witness’ testimony and the accuracy of his identification. Such matters are arguably within the scope of closing argument.
Even remarks beyond the scope of argument or allegedly prejudicial comments require reversal only when the reviewing court is thoroughly convinced that the jury was influenced by the remarks and that such contributed to the verdict. State v. Jarman, 445 So.2d 1184 (La.1984); State v. Sharp, 418 So.2d 1344 (La.1982). In view of the substantial evidence of the defendant’s guilt, we conclude the remarks did not materially contribute to the verdict. See State v. Sharp, supra; State v. Marquer, 446 So.2d 1258 (La.App. 4th Cir. 1984), writ denied 446 So.2d 1258, 450 So.2d 359, 452 So.2d 168 (La.1984); cert. denied 469 U.S. 856, 105 S.Ct. 182, 83 L.Ed.2d 116 (1984). Assignment # 2 lacks merit.
INITIAL POLICE REPORT
By his third assignment the defendant argues he was prejudiced when denied the initial police report which contains the victim’s description given the night of the crime.
When the trial court ordered the State to furnish the report in response to defense discovery motions, the state filed a writ. On April 3, 1985 this court granted the writ. K-3609. Relying on State v. Shrophire, 468 So.2d 582 (La.App. 4th Cir.1985), this court stated Act 945 of 1984 (amending R.S. 44:3 A(4)) did not modify existing discovery rules, particularly La.C.Cr.P. Art. 723. The writ grant noted Act 945 specifically stated the rule requiring initial police reports be public did not apply to any followup or subsequent report or investigation. This court concluded the trial court erred by not conducting an in camera inspection and ordered such an inspection.
Meanwhile, on February 27, 1985 the Louisiana Supreme Court granted a writ on Shropshire. 463 So.2d 1325. The defendant’s trial began May 6,1985. On June 17, 1985 the Supreme Court held the initial police report was a public record subject to discovery. 471 So.2d 707, (La.1985).
The defendant claims he went to trial without obtaining the report and was prejudiced since the victim’s identification was a crucial issue. The State notes the defense never sought a continuance and argues that he waived his right to complain.
At trial N.O.P.D. Officer Dinah Walker testified that she responded to the armed robbery call on December 28,1983 and met the victim, Vincent. He described one of the two perpetrators as a white male, 32 years old, six feet in height, 175 pounds, brown medium length hair with a mustache.
Pursuant to defense counsel’s question as to whether the height may have been six feet six inches, the officer stated the victim told her six feet. When asked whether the hair was curly or straight, the officer did not remember. Although Vincent had said the hair was straight (while McFarland said it was a little wavy), he was (understandably) uncertain of some of the description which was given immediately after the robbery. Officer Walker was sure of the description she had recorded.
There is no evidence that the initial police report contradicted the witnesses’ testimony. From June, 1985 to the present the defendant has made no attempt to obtain the report. Although this court ordered an in camera inspection the defendant does not mention that inspection or the results. After being aggrieved by this court's action in K-3609, he did not apply for writs to *149 the Supreme Court, nor did he argue the issue in his motion for a new trial.
We view the defendant’s assignment as speculation as to how the report may have aided his defense or how his defense was substantially prejudiced by its absence. This assignment lacks merit.
DENIAL OF FAIR TRIAL
In assignment # 4 the defendant makes two arguments. He contends that the cu-mulation of errors, even if considered individually as harmless, unduly prejudiced him and denied his right to a fair trial. We found those errors meritless and when considered collectively also conclude there was no substantial prejudice.
Secondly, he argues the guilty verdict was contrary to the law and evidence. He argues the key element of proof was Vincent’s identification and the testimony of the co-defendant (McFarland) and contends there were inconsistencies in the description of the robber including height, hair and mustache. He points to his alibi witnesses’ testimony and the self-serving nature of McFarland’s testimony. '
To determine the sufficiency of evidence a reviewing court must consider whether any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found the elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another by use of force or intimidation while armed with a dangerous weapon. La.R.S. 14:64.
The defendant was positively identified by the victim (Vincent) and the co-defendant (McFarland) asthe man who held a gun to Vincent’s head and demanded money. The co-defendant testified he took the money and both fled. Marse placed the defendant at the lounge with the two men. We find the evidence sufficient to support the conviction. See State v. Johnson, 489 So.2d 301 (La.App. 4th Cir.1986).
This assignment lacks merit.
EXCESSIVE SENTENCE
The defendant argues his eight year sentence was unconstitutionally excessive when compared to the co-defendant’s sentence of five years (which was suspended under special conditions).
La. Const. Art. I, § 20 prohibits the imposition of excessive punishment. The defendant’s sentence falls in the very low range when the statutory maximum is ninety-nine years. Even when well within the statutory limits, a sentence may be reviewed for excessiveness. State v. Sepulvado, 367 So.2d 762 (La.1979). La.C. Cr.P. Art. 894.1, stating the statutory grounds for imposition of sentence, provides helpful criteria and the trial court is required to individualize the sentence by stating reasons in the record. State v. Telsee, 425 So.2d 1251 (La.1983).
The trial court stated that he took into consideration the guilty verdict reached by the jury and “under Article 894.1, Paragraph A. Number 1, 2 and 3” sentenced him. Article 894.1 A lists aggravating factors. The court does not state any factual basis for the sentence or indicate his consideration of the statutory mitigating factors of Article 894.1 B.
A sentence may be vacated and the case remanded for resentencing when the reasons for an apparently severe sentence in relation to the particular offender and the actual offense do not appear in the record. State v. Walters, 412 So.2d 1388 (La.1982). Otherwise a sentence should not be set aside as excessive punishment in the absence of a clear abuse of the trial court’s discretion. State v. Jones, 381 So.2d 416 (La.1980). See also State v. Davis, 448 So.2d 645 (La.1984).
This court has found a ten year sentence for armed robbery imposed on a first offender not apparently severe. State v. Elloie, 461 So.2d 681 (La.App. 4th Cir. 1984). See also State v. Williams, 420 So.2d 1116 (La.1982) (12 year sentence im *150 posed on first offender). Under these facts there is no need to remand for resentencing for articulation of reasons.
Disparity of -sentences between co-defendants does not render the greater sentence disproportionate if the nature of the defendant’s participation or his character differs significantly from that of his confederate. State v. Telsee, 425 So.2d 1254, fn. 2 (La.1983); State v. Brown, 508 So.2d 118 (La.App. 4th Cir.1987).
The reason for the lesser sentence of the co-defendant was his testimony against the defendant and his cooperation with the police. Pursuant to a plea bargain he pleaded guilty to the lesser charge of simple robbery.
The defendant’s eight year sentence was not apparently severe, there existed a plea bargain agreement as to his co-defendant’s sentence, and the two men’s participation in the crime differed. This assignment lacks merit.
We have reviewed the record for errors patent and there are none.
The conviction and sentence are affirmed.
AFFIRMED.

. McFarland was also charged with armed robbery. Due to plea bargain arrangements contingent on his testimony against the defendant, he was allowed to plead guilty to simply robbery after the defendant’s trial and sentenced to five years which was suspended.

. La.C.Cr.P. Art. 770(2) provides:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible....