527 So.2d 393 (1988)
STATE of Louisiana
v.
Richard THEARD.
No. KA-6570.
Court of Appeal of Louisiana, Fourth Circuit.
June 7, 1988.
Rehearing Denied July 19, 1988.
*394 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., William A. Marshall, Asst. Dist. Atty., New Orleans, for appellee.
William R. Ary, New Orleans, for appellant.
Before BYRNES, CIACCIO and PLOTKIN, JJ.
BYRNES, Judge.
The defendant, Richard Theard, was convicted of second degree murder, a violation of R.S. 14:30.1, and sentenced to the mandatory terms of life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. This appeal followed.

*395 FACTS
On December 11, 1983, at approximately 5:00 a.m., the defendant, Richard Theard, and his cousin, George Johnson were patrons of the Swinger's Lounge at 2610 Tupelo Street. When Johnson went outside to retrieve cigarettes from the defendant's automobile, he was bitten by the defendant's dog as he reached inside the car. This incident was witnessed by the victim Simmuel Raymond a/k/a Peanut. A verbal argument between the defendant and the victim began when the defendant delayed transporting Johnson to the hospital. Patrons of the establishment intervened and prevented the confrontation from escalating. However, a second argument between the two began shortly thereafter. This argument ended abruptly when the defendant pulled out a .32 caliber pistol. Although accounts by eyewitnesses of these events differ somewhat, two of the eyewitnesses testified that the defendant shot the victim in the back as he attempted to flee. All agree that the defendant fired four to six times. Three bullets hit the victim from behind. He died at Charity Hospital later that morning. All eyewitnesses agreed that no physical altercation occurred immediately before the shooting and that the victim had no weapon. Theard surrendered himself to his nephew, Officer James Slack, and voluntarily gave his .32 caliber pistol to the officer.
Theard testified at trial that he and the victim had an argument which became a physical confrontation. According to Theard, the victim grabbed his pistol and as they struggled to gain control of the weapon it discharged, throwing both men backwards. The defendant stated that he then fired several more shots at the victim.

ERRORS PATENT
A review of the record reveals no errors patent.

ASSIGNMENT OF ERROR NO. 1
By this assignment, the defendant contends that the evidence presented at trial was insufficient to support a conviction for second degree murder. Specifically, he argues that the evidence showed that he was provoked by the victim, and that he did not have the specific intent to kill.
Second degree murder is defined in pertinent part in R.S. 14:30.1 as the killing of a human being when the offender has specific intent to kill or inflict great bodily harm. The appellant argues that although this was an intentional killing, it was committed in sudden passion or heat of blood and, therefore, the proper verdict was manslaughter.[1] We do not agree.
Sudden passion and heat of blood are not elements of the offense of manslaughter; rather they are mitigating factors in the nature of a defense which exhibit a degree of culpability less then that present when the homicide is committed without them. State v. Lombard, 486 So.2d 106 (La.1986), citing State v. Tompkins, 403 So.2d 644 (La.1981). If these mitigating factors are established by a preponderance of the evidence, a defendant is entitled to a manslaughter verdict and a verdict of second degree murder is inappropriate.
In this case, two eyewitnesses testified that the defendant shot the victim in the back as he was attempting to run from the bar. Dr. Paul McGarry testified that three bullets entered the victim's body; two of which (the most lethal) entered through his back and buttocks. None of the eyewitnesses stated that the victim physically assaulted the defendant, nor did anyone testify that the combatants appeared intoxicated. Moreover, all eyewitnesses agreed that the victim was unarmed and did not attempt to wrestle the defendant's weapon from him. Given this testimony, we find that the defendant's actions were not committed *396 in "sudden passion" or "heat of blood".
This assignment is without merit.

ASSIGNMENT OF ERROR NO. 2
By this assignment, the defendant argues that the trial court erred by admitting into evidence the gun "seized" from him by his cousin, Officer James Slack.
At the hearing on defendant's motion to suppress, Officer Slack testified that he was contacted by his aunt, who said that his uncle, the defendant, wished to surrender himself to Officer Slack. The officer stated that he first confirmed that an arrest warrant was issued for the defendant, then proceeded to his aunt's house where the defendant was waiting. As the men were ready to leave, the defendant said "Wait a minute, do you want the gun?" Officer Slack then agreed to take possession of the weapon, but only after the defendant assured him it was not "hot". The officer had not read the defendant his Miranda rights at this time. That occurred later when the men were sitting in the officer's vehicle. Defendant argues that the failure of his nephew to read him his Miranda rights before "seizing" the gun renders it inadmissable. We disagree.
There is no requirement that a defendant be read his Miranda rights before police officers accept evidence voluntarily surrendered by a criminal suspect. The record shows that the encounter between defendant and his nephew was not a custodial interrogation. There is no indication that Officer Slack questioned the defendant before the gun was turned over to him. In the absence of custodial interrogation, Miranda does not apply, nor does Miranda apply to spontaneous statements by defendants, even if they are in custody when the statements are made. State v. Robinson, 384 So.2d 332 (La.1980). Moreover, no Fourth Amendment rights were implicated in this case since no search took place; the defendant offered the weapon to the officer without any prompting on the officer's part. In fact, the record indicates that until the defendant mentioned it, the officer did not know the weapon existed or was in the defendant possession.
This assignment is without merit.

ASSIGNMENT OF ERROR NO. 3
By this assignment, the defendant argues that the trial court erred in allowing a transcript of Officer Slack's testimony from a prior hearing to be read to the jury in lieu of his live testimony at trial.
C.Cr.P. Art. 295 provides in part that:
The transcript of testimony of any other witness who testified at the preliminary examination is admissible for any purpose in any subsequent proceeding in the case, on behalf of either party, if the court finds that the witness is dead, too ill to testify, cannot be found, or is otherwise unavailable for testimony, and that the absence of the witness was not procured by the party offering the testimony.
In State v. Robinson, 423 So.2d 1053, 1058 (La.1982), the court, quoting from State v. Hills, 379 So.2d 740 (La.1980), set forth five conditions which must be met before a transcript of a prior hearing may be introduced as evidence at a subsequent trial: (1) the defendant must have been represented by counsel at the earlier hearing; (2) the witness testified under oath; (3) the witness was cross-examined or else there was a valid waiver of the right to cross-examination; (4) at the time of trial, the witness (whether out-of-state or not) is unavailable or unable to testify; and (5) the state has made a good faith diligent effort to obtain the presence of the witness, including by its out-of-state subpeona powers where appropriate.
The first three of these conditions are easily met. Officer Slack testified under oath at a hearing on March 20, 1984 where he was thoroughly cross-examined by the defense counsel. As to the fourth and fifth conditions, the State attempted to locate the witness on more than one occasion by telephone and through a departmental service. An attachment was issued for the officer. An investigator was apparently sent to look for him. In our opinion, this was sufficient to allow the transcript of his *397 testimony at the preliminary hearing into evidence at trial. Moreover, even if it was error to allow the transcript to be used we deem it harmless beyond any doubt given the overwhelming evidence of defendant's guilt.
This assignment is without merit.

ASSIGNMENT OF ERROR NO. 4
By this assignment, the defendant contends that the trial court erred in allowing certain items into evidence at trial despite the State's failure to disclose this evidence in response to his discovery motions. Specifically, the defendant complains of the admission of the arrest warrant, two lab reports and a blood sample.
The defendant asked in his motion for bill of particulars and for discovery and inspection whether he was arrested with an arrest warrant. The State answered that the defendant was not arrested with an arrest warrant. The State's answer was correct. The defendant was arrested when he voluntarily surrendered to his nephew, Officer James Slack. Furthermore, it is difficult to imagine any prejudice suffered by the defendant when it was revealed at trial that an arrest warrant had been issued prior to his surrender. The warrant was not viewed by the jury, but was merely introduced to complete the record. This argument is without merit.
The defendant further complains of two lab report which again were not viewed by the jury, but were merely introduced for purposes of completing the record. The defendant requested these items in his discovery motions. The State responded by stating "yes attached". Thus, it appears that these items were furnished by the State, however, defense counsel claims he never received them. The record seems to indicate otherwise. The minute entry of July 6, 1984 states that the defense counsel claimed to be satisfied with the State's answers to the bill of particulars.
However, even assuming that he did not receive these documents and did not know they existed until trial, it does not appear that the defendant suffered any prejudice when Ms. Angela Comstrock and Ms. Ruby Ory testified regarding these reports. Ms. Comstrock testified that she analyzed a blood sample from the victim which showed a blood alcohol percentage below that of legal intoxication. Ms. Ory testified without objection by defense counsel that she performed a drug screen on a urine sample of the victim and found no evidence of 150 commonly used drugs.
Neither of these reports were shown to the jury and the defendant was able to cross-examine both witnesses regarding the substance of these reports. Neither report tended to inculpate or exculpate the defendant; they merely reported that while there was some evidence of alcohol in the victim's blood, no evidence of 150 commonly used drugs was found in the specimen tested by Ms. Ory.
Pursuant to C.Cr.P. Art. 718(2) the State, on motion of defendant, has an obligation to make available to the defendant an itemization of material in its possession or control if the state intends to use such material as evidence at trial. Also C.Cr.P. Art. 719 requires the district attorney to permit the defendant to inspect, copy or otherwise reproduce any tests or reports of physical or mental examination and scientific tests or experiments which are in possession of the district attorney and intended for use at trial. However, the failure of the State to comply with these discovery procedures will not automatically require reversal. Rather, the reviewing court must determine whether any prejudice which may have resulted from the noncompliance caused the trier of fact to reach the wrong conclusion. State v. Smith, 485 So.2d 646 (La.App. 4th Cir.1986).
In the present case, it does not appear that the State's alleged noncompliance prejudiced the defendant. Theard's conviction was clearly based on the testimony of the eyewitnesses, not the neutral results of these tests.
The defendant finally complains that the State failed to reveal that a blood sample was taken from the floor of the Swinger's Lounge. Officer Joe Miestchovich testified and was cross-examined concerning a blood *398 sample he obtained from the floor of the lounge. There is no other testimony or evidence regarding this blood sample. It was not linked to the defendant, the victim, or this crime.
Assuming arguendo that the State failed to comply with the motion for bill of particulars and discovery and inspection filed by the defendant, this non-compliance did not cause the fact finder to reach the wrong conclusion. This assignment is without merit.

ASSIGNMENT OF ERROR NO. 5
By this assignment of error, the defendant argues that the trial court erred by denying his motion for mistrial when the prosecution commented on the findings of the grand jury.
The comments made during rebuttal at closing arguments, complained of are as follows:
MR. ALEXANDER:
Manslaughter is not applicable. When the offender has the specific intent to kill or to inflict great bodily harm. It's clear as a bell and that's why the Grand Jury indicted him for second-degree murder because the evidence show it was a second-degree murder.
Mr. ARY:
Your Honor, I am going to object an move for a mistrial.
THE COURT:
Motion is denied. This is argument, neither one of you are under oath and it's merely the opinion of both counsel. You have the right to accept or reject it so far as it squares with your appreciation of the evidence and testimony. (The Court charges the jury.)
The prosecutor's comments were clearly improper. It is impermissible for the prosecutor to abandon his argument on the evidence and express his opinion as to the guilt of the defendant by commenting that he would not prosecute if he did not have a case. C.Cr.P. Art. 774: State v. Hamilton, 356 So.2d 1360 (La.1978); see also State v. Procell, 365 So.2d 484 (La.1978); State v. Sawyer, 350 So.2d 611 (La.1977). Likewise, the prosecutor's statement that the Grand Jury's indictment of the defendant indicates its belief that "the evidence shows it was a second-degree murder" was also improper.
However, a mistrial is a drastic remedy and is warranted (except in cases where mandatory) only if substantial prejudice would result and deprive the defendant of a fair trial. The determination of "substantial prejudice" is within the trial court's discretion and will not be disturbed absent abuse of that discretion. State v. Arcement, 514 So.2d 144 (La.App. 4th Cir.1987). Furthermore, even remarks beyond the scope of argument require reversal only when the reviewing court is thoroughly convinced that the jury was influenced by the remarks and that the remarks contributed to the verdict. State v. Jarman, 445 So.2d 1184 (La.1984).
Here, the jury deliberated only nine (9) minutes before finding the defendant guilty as charged. Three eyewitnesses testified that the defendant shot the victim in the back without physical provocation, as the victim was attempting to flee. The defendant admitted shooting the victim. In view of the substantial evidence of the defendant's guilt, it does not appear that this single improper remark materially contributed to the verdict.
This assignment is without merit.
For the foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] R. S. 14:31 provides that manslaughter is, "a homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if a jury finds that the offender's blood had actually cooled or that an average person's blood would have cooled at the time the offense was committed."