JiDECUIR, Judge.
Anthony Armstrong was charged by a bill of information with armed robbery. He and a co-defendant, Cedric Johnson, entered pleas of not guilty. Before trial, Johnson changed his plea to guilty. He was sentenced to serve five (5) years of imprisonment. At a preliminary examination requested by the present defendant, Johnson stated Armstrong was not the co-perpetrator. Johnson was subsequently charged with perjury; he entered a plea of not guilty prior to Armstrong’s trial. The current defendant filed a motion to quash, claiming the perjury charge against Johnson (his potential chief witness) was improper. After a hearing, the district court denied the motion. Armstrong also filed a motion to suppress evidence, seeking to prevent the state from using an out-of-court identification at trial. This motion was granted.
After being convicted on the armed robbery charge, defendant was billed as an habitual offender and sentenced to ninety-nine (99) years at hard labor. His motion |2to reconsider sentence was denied. Armstrong now appeals his conviction and sentence, citing fourteen (14) assignments of error.

FACTS:

At approximately 11:15 p.m. on January 3, 1995, two men wearing bandannas around the lower halves of their faces entered Mike’s Super Mart in Bunkie, Louisiana. One man brandished a handgun and gave orders to the clerks; the second man produced a paper bag in which he stuffed approximately $400.00 from the cash drawer. At trial, the two clerks both identified the defendant as the gunman.

ASSIGNMENT OF ERROR NO. 9:

By this assignment, defendant contends the evidence adduced at trial was insufficient to have supported his conviction. The Louisiana Supreme Court held in State v. Hea-rold, 603 So.2d 731, 734 (La.1992):
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accordance with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) in the light most favorable to the prosecution, could not reasonably conclude that all of the essential elements of the offense have been proved beyond a reasonable doubt. When the entirety of the evidence, including inadmissible evidence which was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any discussion by the court of the trial error issues as to that crime would be pure dicta since those issues are moot.
On the other hand, when the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the accused is not entitled to an acquittal, and the reviewing court must then consider the assignments of trial error to determine whether the accused is entitled to a new trial. If the reviewing court determines there has been trial error (which was not harmless) in cases in which the entirety of the evidence was sufficient to support the conviction, then the accused must receive a new trial, but is not entitled to an acquittal even though the admissible evidence, considered alone, was insufficient. _¡sLockhart v. Nelson, 488 U.S. 33, 109 S.Ct. 285,102 L.Ed.2d 265 (1988).
We accordingly proceed first to determine whether the entirety of the evidence, both admissible and inadmissible, was sufficient to support the conviction.
Armstrong’s appellate argument centers on evidence he claims was improperly admitted, but pursuant to Hearold this is not the proper subject of a Jackson review.
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements *1265 of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses and, therefore, the appellate court should not second-guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino, supra, citing State v. Richardson, 425 So.2d 1228 (La.1983).
In order for the state to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt.
La.R.S. 14:64(A), “Armed Robbery,” states:
Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
Two (2) eyewitnesses identified Armstrong as the gunman in the robbery. These witnesses, who were the clerks on duty when the crime occurred, thus satisfied |4the act and identity elements of the crime. Witness Chris Machen’s testimony also referred to the defendant’s verbal instructions during the robbery, which made clear that Armstrong had the requisite intent.
As the evidence adduced at trial was sufficient under Jackson and Hearold, this assignment lacks merit.

ASSIGNMENTS OF ERROR NOS. 1 and 2:

The defendant complains the district court erred in failing to suppress the eyewitnesses’ in-court identifications of him as the gunman. Also, he contends the lower court erred by finding he “opened the door” at trial to the otherwise inadmissible out-of-court identifications.
Before trial, the district court suppressed the eyewitnesses’ identification of Armstrong at the Bunkie police station. In the court’s view, the witnesses’ one-on-one identifications of the defendant were made in unduly suggestive circumstances. However, eyewitnesses Ponthier and Machen were allowed to make in-court identifications of Armstrong as the gunman. Armstrong argues the improper out-of-court identifications “tainted” the identifications at trial.
... For the identification to be inadmissible due to an allegedly suggestive identification procedure, there must be a substantial likelihood of misidentification in addition to the suggestive identification procedure. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); [State v.] Rosette, [94-1075 (La.App. 3 Cir. 3/22/95)]; 653 So.2d 80. Thus, an appellate court must determine from the totality of the circumstances, whether the suggestive identification presents a substantial likelihood of misidentification.
In determining whether there was a substantial likelihood of misidentification, we consider the factors as delineated by the United States Supreme Court in Neil v. Biggers: (1) the witness’ opportunity to view the criminal when the crime was committed; (2) the degree of attention by the witness; (3) the accuracy of the prior description of the criminal given by the witness; (4) the level of certainty evidenced by the witness at the confrontation; and (5) the amount of time between the offense and the confrontation. Furthermore, this court has held that “[a]gainst these factors is to be weighted the corrupting effect of the Issuggestive identification itself”. Rosette, 94-1075 at pp. 4-5, 653 So.2d at 82.
State v. Johnson, 95-711 (La.App. 3 Cir. 12/6/95); 664 So.2d 766. See also: State v. Davis, 95-801 (La.App. 3 Cir. 2/6/95); 664 So.2d 821.
As to the first two Biggers factors, the store clerks testified the market was well-lit, and their attention was focused on the gunman. The lower half of his face was hidden, but they could see his eyes, the bridge of his nose, his forehead, and his hair. Louisiana courts have previously upheld identifications of defendants whose faces were covered or partially covered. See, e.g., State v. Nicholas, 397 So.2d 1308 (La.1981); *1266 also State v. Courville, 536 So.2d 661 (La.App.1988). The third Biggers factor,.accuracy of the witnesses’ prior description, cannot be assessed, as little information on the matter appears in the record. Fourth, both Ponthier and Machen were certain of their identifications. The final Biggers factor is the time between the offense and the confrontation. The (initially) suppressed out-of-court identification was made within a day of the offense. The in-court identifications were made on May 17, 1995 — approximately four months after the robbery.
Analyzing the reliability of the in-court identifications under the totality of the circumstances, this court finds them to be reliable. Both eyewitnesses testified their attention was fixed upon the gunman throughout the hold-up. The clerks’ fixed attention on the gunman presents a basis for the in-court identification, independent of the improper line-up. Additionally, it is noteworthy that at the first line-up, the two store clerks did not mis-identify any of the four suspects as the gunman. The two clerks had a full opportunity to view the defendant in a well-lit store.
The defendant also complains that the lineups, having been ruled inadmissible before trial, were discussed in testimony before the jury. At trial, the following exchange occurred during the defense cross-examination:
I ;;Did you ever remember seeing him before that night?
No, I didn’t.
Since that night, how many times have you seen him?
Three times.
And, where were those?
Once in the police station, and twice in court.
That includes today?
No, that would be the fourth time, today.
OK, so, three times in court, working backwards — today, two other times in court, at the Bunkie Police Station, and, as you believe, that night ...
Yes, and that night.
... since that night of ... Now, was he ever put in a line-up for you? Did you see him one-on-one?
I saw him one-on-one.
[[Image here]]

RE-DIRECT EXAMINATION

BY MR. KNOLL:
Mr. Ponthier, immediately after, or that same night, did you have an occasion to go to the Bunkie Police Station, sir?
Yes, we did.
What was the purpose of going over to the station?
We went and looked at a few guys.
Do you remember how many guys you looked at? '
Four.
BY MR. McKAY:
Your honor, I object. He’s testified that he didn’t — this man was not in a line-up. Another thing, it’s improper re-direct examination.
|7BY THE COURT:
I’m going to overrule. This was opened by the defense when he asked about seeing him at the Bunkie Police Station and all that. Overruled.
Ponthier then testified he had viewed a four-man line-up, with the suspects’ faces obscured by a cap. He did not identify any of these men as the gunman. The next night he viewed the defendant, face obscured, one-on-one and identified him.
We note several cases in which various types of otherwise inadmissible evidence have been allowed after the defense addressed an issue involving that evidence. See, e.g., State v. Mitchell, 94-521 (La.App. 3 Cir. 11/2/94); 649 So.2d 569, also State v. Coleman 94-0666 (La.App. 3 Cir. 12/15/94); 647 So.2d 1355; writ denied, 95-0145 (La.5/19/95); 654 So.2d 1354, also State v. Carter, 572 So.2d 1131 (La.App. 1 Cir.1990). As explained in State v. Gay, 616 So.2d 1290 (La.App. 2 Cir.), writ denied, 624 So.2d 1223 (La.1993): “opening the door” involves situations “when the prosecutor’s references or questions can be classified as responsive to an issue which the defendant himself, has brought into the ease.”
*1267 Furthermore, the standard of review for admissibility decisions is abuse of discretion. In view of the defendant’s open-ended questioning, we cannot say that the lower court abused its discretion by admitting testimony about the police line-ups.

ASSIGNMENT OF ERROR NO. 3:

By this assignment, defendant alleges the district court erred by denying his motion to quash. On the day of trial but prior to jury selection, Armstrong filed the motion based upon the prosecution’s filing of a perjury charge against Cedric Johnson. Johnson had confessed to being the “bag man” mentioned in the previous discussion and named Armstrong as the gunman in his initial statements to police. However, when he testified at the defendant’s preliminary examination, Johnson | «denied that Armstrong was the other robber. After an extensive colloquy on the record, the state charged Johnson with perjury. The defendant complains there is no factual basis for the perjury charge, citing three written or transcribed statements (counting the testimony just noted) in which Johnson either named an individual named “Andy” as his co-perpetrator, or clearly denied Armstrong was the gunman.
The core of this assignment is the defendant’s view that there is a “total lack of any facts on which to base a perjury charge” and his contention the charge was used merely to intimidate Johnson, a potential key witness for Armstrong’s case.
Johnson’s testimony at the preliminary examination directly contradicted an earlier statement made to police. Although Johnson initially referred to the gunman as “Andy,” it is clear from the context of the earlier statement that he was referring to the defendant. Police questioners consistently used the name “Anthony,” and also the defendant used it. Thus, when Johnson testified Armstrong was not present at the robbery, the prosecution was faced with contradictory assertions by the same party. This situation formed a sound basis for a perjury charge under La.R.S. 14:128. Any statements supporting Johnson’s sworn examination testimony may avail him at a trial on the charge, but do not negate the basis for the bill of information. Such questions may be appropriately weighed at a perjury trial.
As the perjury charge was clearly appropriate, this assignment has no factual basis, and thus lacks merit.

ASSIGNMENT OF ERROR NO. 4:

The defendant contends the district court erred in allowing Cedric Johnson to plead his Fifth Amendment right and refuse to testify at trial. Johnson’s refusal to testify was apparently connected with the perjury charge pending against him.
La.R.S. 15:276 provides:
I9N0 witness can be forced to criminate himself, but the judge is not bound by the witness’ statement that the answer would criminate him, when from the nature of the question asked and the circumstances of the case such statement can not be true.
The court in State v. Joseph, 619 So.2d 1229, 1232 (La.App. 3 Cir.), sentences modified, 629 So.2d 360 (La.1993), stated:
In State v. Jones, 559 So.2d 492 (La.App. 5 Cir.1990), unit denied, 566 So.2d 981 (La.1990), the court stated it was not error for the trial court to allow a blanket assertion by a co-defendant of his Fifth Amendment privilege where the co-defendant was charged with participation in the same crime as the individual on trial and it was apparent that the questioning would be devoted to a subject matter which would require the co-defendant to invoke the privilege. In so stating, the court reasoned as follows: “It is not necessary for a witness charged with participating in the same crime for which the defendant is being tried to assert the privilege on a question by question basis when it is apparent that the witness will be asked to testify only regarding matters which could be expected to require the invocation of the privilege.” We find the trial court properly refused to require the codefend-ants, Gary Joseph and Alex Shawn Antoine, to testify after their attorneys indicated they would exercise their rights against self-incrimination.
The court in State v. Knowles, 395 So.2d 678 (La.1981), in which a witness invoked her *1268 privilege against self-incrimination and was held in contempt, stated:
The federal privilege against self-incrimination was made applicable to the states in Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). It protects a witness as fully as a defendant. State v. Doran, 215 La. 151, 39 So.2d 894 (1949). When a witness refuses to testify on Fifth Amendment grounds, a contempt citation is only justified when it is clear there is no possibility of self-incrimination. Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951); United States v. Yurasovich, 580 F.2d 1212 (3 Cir.1978).
Knowles had been acquitted of first degree murder but was still facing prosecution for conspiracy to commit murder. The subsequent quashing of that indictment is irrelevant to the threat of incrimination facing defendant at the time of this trial.
The State’s assurance that it would ask the same questions Knowles had answered at her murder trial did not insure that the answers would not incriminate. Repetition under oath of the same facts might have added weight to the government’s evidence at a subsequent trial. United States v. Malone, 111 F.Supp. 37 (1953); United States v. \\f$teffen, 103 F.Supp. 415 (1951); United States v. Miranti, 253 F.2d 135 (2 Cir.1958). If Knowles had refused to testify at a later trial, the transcript from this proceeding would have been admissible evidence. State v. Dotch, 298 So.2d 742 (La.,1974); State v. Ghoram, 328 So.2d 91 (La.,1976). See also LSA-C.Cr.P. art. 295.
Even if the State had limited its questions to those asked at the prior trial, Knowles would have been subject to cross-examination on the entire case by her sister’s counsel. United States v. Wilcox, 450 F.2d 1131 (5 Cir.1971); LSA-R.S. 15:280. Further admissions might have been obtained under cross-examination.
Id. at 680.
As to whether Johnson should have or could have been granted immunity, we note La.Code Crim.P. art. 439.1(A):
In the ease of any individual who has been or may be called to testify or provide other information at any proceeding before or ancillary to a grand jury of the state, at any proceeding before a court of this state, or in response to any subpoena by the attorney general or district attorney, the judicial district court of the district in which the proceeding is or may be held shall issue, in accordance with Subsection B of this article, upon the request of the attorney general together with the district attorney for such district, an order requiring such individual to give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination, ...
Thus, the lower court lacked authority to grant Johnson immunity.
Based upon the jurisprudence and circumstances of this case, we find no error on the part of the district court. Therefore, this assignment likewise lacks merit.

ASSIGNMENT OF ERROR NO. 5:

In this assignment, the defendant claims the district court erred in refusing to allow him to introduce the preliminary examination testimony of Cedric Johnson, after Johnson asserted his Fifth Amendment right against self-incrimination.
Once Johnson had asserted his right not to testify, the defense moved to enter into evidence Johnson’s testimony from the preliminary examination citing La.Code Crim.P. art. 295B:
I ii The transcript of testimony of any other witness who testified at the preliminary examination is admissible for any purpose in any subsequent proceeding in the case, on behalf of either party, if the court finds that the witness is dead, too ill to testify, cannot be found, or is otherwise unavailable for testimony, and that the absence of the witness was not procured by the party offering the testimony.[1]
*1269 At trial, the lower court ruled that invoking the Fifth Amendment did not render Johnson “unavailable.” However, the jurisprudence indicates that a witness who has invoked his right against self-incrimination is considered unavailable for procedural purposes. State v. Ghoram, 328 So.2d 91 (La. 1976), State v. Magouirk, 539 So.2d 50 (La.App. 2 Cir.1988), after remand, 561 So.2d 801 (La.App. 3 Cir.), writ denied, 566 So.2d 983 (La.1990). Because of Cedric Johnson’s unavailability at trial, the defendant argues he should have been able to introduce the transcript of Johnson’s testimony from the preliminary examination.
Unavailability does not mean that the preliminary examination is automatically admissible, however. The jurisprudence also requires:
The inquiry does not end here, however. Unavailability of the testimony is not the only showing necessary for the introduction of transcripts from a prior hearing. A defendant’s constitutional protections likewise must not be offended. Particularly susceptible to derogation where such transcripts are used later is the defendant’s right of confrontation.
State v. Theard, 527 So.2d 393, 396 (La.App. 4 Cir.), writ denied, 533 So.2d 372 (La.1988).
| i2The state argues the preliminary examination transcript was not admissible at trial because the prosecution did not have an opportunity to cross-examine Johnson. The state began a cross-examination at the preliminary examination, but the witness refused to answer any questions about the gunman’s identity. The court then held the witness in contempt, and the state prepared the perjury charge. Thus, the state was effectively prohibited from cross-examining the witness. Although the constitutional right to cross-examination lies with defendants, the jurisprudence holds the state also “has an undoubted right to cross-examine defense witnesses.” State v. St. Amand, 274 So.2d 179, 192 (La.1973), also State v. McClinton, 399 So.2d 178 (La.1981). The trial court was correct in excluding statements that had not been tested for credibility.
The issue is not, at its core, the state’s “right” to cross-examine, but the reliability of the information being placed before the jury. Without an opportunity for state cross-examination, the transcript of the preliminary examination represented “untested” evidence. Since Johnson was never cross-examined, the jury might have been left to weigh unreliable testimony.
Thus, the appropriate balance is between the need to ensure reliability of the evidence, and the defendant’s right to put on his ease. La. Const. Art. I, § 16. In State v. Adams, 550 So.2d 595 (La.1989), after remand, 609 So.2d 894 (La.App. 4 Cir.1992) the Louisiana Supreme Court upheld a trial court decision to exclude a witness’ inculpatory hearsay statements as unreliable. The witness made the statements in the hallway outside the courtroom. When called to testify (outside the jury’s presence), he asserted his fifth amendment privilege. After reviewing several background factors, including psychological evaluations of the witness (who had | i3prior head injuries), and the lack of corroborating evidence, the district judge excluded the hearsay inculpatory statements.
Evaluating the lower court’s decision, the Adams court cited Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), a seminal case analyzing the basic right to present a defense:
[t]he United States Supreme Court has also recognized that a defendant’s fundamental constitutional right to present witnesses in his own defense requires the court to allow such hearsay evidence if the surrounding circumstances provide “considerable assurance of [the statements’] reliability.”
[[Image here]]
... The Court concluded that the hearsay statements “bore persuasive assurances of trustworthiness” and were admissible un *1270 der the declaration against interest exception.
Adams, 550 So.2d at 598.
We note the following language, from Chambers:
Few rights are more fundamental than that of an accused to present witnesses in his own defense.... In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.
Chambers, 410 U.S. at 302, 93 S.Ct. at 1049 (citations omitted).
According to the defense, the state created an accusatory atmosphere by threatening Johnson with a perjury charge at the preliminary examination. Our review of the record does not accord with the scenario depicted by the defendant. After his direct testimony, Johnson was informed of Louisiana’s perjury provisions. He then exercised his right against self-incrimination. The state made an unsuccessful attempt to cross-examine him. The record does not reflect a highly-charged, accusatory atmosphere. Therefore, the defendant’s contentions on this point lack a factual basis.
| ^Because of the strong need to establish reliability of the evidence and La.Code Crim.P. art. 294’s mandate of cross-examination, the trial court did not err in ruling the preliminary examination inadmissible. Therefore, this assignment lacks merit.
ASSIGNMENTS OF ERROR NOS. 6, 7, 8 and 14:
The defendant does not address these assignments, either in his original brief or reply brief. Failure to argue an assignment of error constitutes waiver of the error. Uniform Rules — Courts of Appeal Rule 2-12.4.

ASSIGNMENT OF ERROR NO. 10:

By this assignment, the defendant claims the trial court erred by finding him to be an habitual offender. Defendant cites State v. Shelton, 621 So.2d 769, (La.1993) for his contention that when the state proves the existence of prior guilty pleas, it must affirmatively show the defendant knowingly and voluntarily waived his rights. (i.e., the right to jury trial, the right to confrontation, and the privilege against self-incrimination). As waiver of these rights did not appear in the records submitted at the habitual offender proceeding, Armstrong argues Shelton ⅛ standards were not met, and therefore he should not have been sentenced as an habitual offender.
However, we note the following language from Shelton:
In light of the fact that Parke [u Raley, 506 U.S. 20,113 S.Ct. 517,121 L.Ed.2d 391 (1992)] holds Boykin \v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)] does not require that the entire burden be placed on the prosecution in a recidivism proceeding and because our present system of placing the entire burden on the State fails to give any presumption of regularity to a final conviction used in an habitual offender hearing, we today revise our previous scheme allocating burdens of proof in habitual offender proceedings.
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a | ^procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State.
Id. at 779.
The state proved the existence of the prior pleas, and that Armstrong was represented by counsel at the earlier proceedings. Under Shelton, the burden then shifted to the defendant. See also State v. Chapman, 93-1524 (La.App. 3 Cir. 10/5/94); 643 So.2d 394, writ denied, 94-2724 (La.2/9/95); 649 So.2d 420. Armstrong made no affirmative showing of irregularities in the prior proceeding. He made no argument and presented no evidence.
Thus, this assignment lacks merit.

*1271
ASSIGNMENTS ERROR NOS. 11, 12 and 13:

The defendant combines these assignments in his brief contending that the district court erred in sentencing him to ninety-nine (99) years imprisonment without benefit of parole, probation, or suspension of sentence, and by denying relief upon the defendant’s motion to reconsider sentence.
La.R.S. 15:529.1 states, at A(2)(c)(I) provides:
If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then:
The person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life; or
[[Image here]]
The penalty provision of La.R.S. 14:64, “Armed Robbery,” states:
Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than five years and for not more than ninety-nine years, without benefit of parole, probation or suspension of sentence.
|16Armstrong acknowledges the statutory language supports the sentence, but argues the sentence should have been reduced under State v. Dorthey, 623 So.2d 1276 (La.1993). The Louisiana Supreme Court recently made the following assessment of Dorthey and 15:529.1:
Louisiana’s judiciary maintains the distinct responsibility of reviewing sentences imposed in criminal cases for constitutional exeessiveness. State v. Sepulvado, 367 So.2d 762 (La.1979). However, in order to find the punishment mandated by La.R.S. 15:529.1 excessive, the trial judge must find that the sentence makes no measurable contribution to the acceptable goals of punishment or that the sentence amounts to nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime. State v. Dorthey, 623 So.2d 1276 (La.1993).
In imposing a six year sentence rather than the statutorily-mandated eight year sentence, the trial court made no such finding. Clearly, under the standards set forth in Dorthey, it cannot be said that an eight year sentence is grossly out of proportion to the crime, whereas a six year sentence is not.
State v. Lombard, 95-2107 (La.11/27/95); 662 So.2d 1039.
The defendant notes that nobody was killed, injured, or held hostage, and no minor or infirm victims were involved. We are cognizant of similar cases in which ninety-nine-year sentences have been upheld, e. g., State v. Carter, 570 So.2d 234 (La.App. 5 Cir.1990) [victim robbed at knife-point, but not injured]; State v. Douglas, 389 So.2d 1263 (La.1980) [victim robbed at gunpoint, but not injured]; State v. James, 545 So.2d 560 (La.App. 4 Cir.), writ denied, 551 So.2d 618 (La.1989) [victim robbed at gunpoint, pushed, forced to lay down on sidewalk]; State v. Williams, 482 So.2d 1090 (La.App. 3 Cir.1986) [armed robbexy of a grocery store].
The present defendant had two prior robbery convictions and a conviction for simple escape. In the case sub judice, he robbed a curb market at gunpoint, menacing two young clerks. The present crime also represents an escalation of a violent potential in Armstrong’s criminal career. With this in mind, the current sentence | ^clearly makes a measurable contribution to acceptable penal goals; i.e., punishment of an incorrigible felon and long-term protection of society from a potentially violent offender.
The defendant also complains the district court should have followed the Louisiana Sentencing Guidelines. He was sentenced on August 15, 1995, the same date Act 942 of the 1995 Regular Session went into effect. La.Code Crim.P. arts. 881.4 and 894.1 have been amended, eliminating any reference to the Guidelines. Thus, they do not present an issue in this ease. Also, the sentence imposed is mandatory.
*1272 The defendant also complains about the five-year sentence received by corperpetrator Cedric Johnson. However, it is well-settled that disparate sentences are permissible.
Armstrong further complains he was not informed about potential “good time,” citing La.Code Crim.P. art. 894.1D(1). Nevertheless, La.Code Crim.P. art. 894.1F provides:
However, no sentence shall be declared unlawful or inadequate for failure to comply with the provisions of Paragraph D.
Ergo, the omission does not form a ground for reversal.
For the reasons discussed, the sentence is appropriate, and this assignment lacks merit. CONCLUSION:
The defendant’s conviction and sentence is affirmed.
AFFIRMED.
THIBODEAUX, J., dissents with reasons.

. See also La.Code Crim.P. art. 294: "Examination of witnesses; transcript of testimony"
A. At the preliminary examination the state and the defendant may produce witnesses, who shall be examined in the presence of the defendant and shall be subject to cross-examination. The defendant may also testify, subject to *1269 cross-examination. A record of the preliminary examination proceedings shall be made.