285 So.2d 221 (1973)
STATE of Louisiana
v.
Charles Maurice VASSEL.
No. 53540.
Supreme Court of Louisiana.
October 29, 1973.
Rehearing Denied November 30, 1973.
*223 Jerry A. Kirby, Kirby & McLeod, Monroe, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., LeRoy A. Hartley, Asst. Atty. Gen., J. Carl Parkerson, *224 Dist. Atty., Michael S. Ingram, Asst. Dist. Atty., for plaintiff-appellee.
MARCUS, Justice.
This appeal is taken from a conviction for murder committed by defendant during the course of an armed robbery. Defendant was sentenced to life imprisonment and relies upon thirteen bills of exceptions for a reversal of his conviction and sentence.
Bill of Exceptions No. 1 was reserved when the trial court denied the motion to suppress a pistol seized at 1725 Adams Street. Defendant contends that this pistol was seized at this residence without the benefit of a valid search warrant; in the alternative, it was not seized incidental to a valid arrest; or, in the further alternative, the evidence was seized by unconstitutional means and/or methods.
The State contends that the seizure of the .22 caliber pistol, which was subsequently introduced at the trial on the merits, was seized lawfully because of the consent given by the mother of George Wilson, the then occupant of 1725 Adams Street. Furthermore, defendant has no standing to object to the seizure.
On May 12, 1972, an armed robbery at a liquor store in Monroe took place. During the robbery, an employee of the store was shot by a Negro male, later learned to be the defendant, who had entered the store brandishing a pistol and wearing a stocking mask.
Two days later, Monroe police officers received information from a confidential and reliable informant that the defendant, Charles Maurice Vassel, had committed the crime and was still in possession of the murder pistol. An address where Vassel could be found was furnished to the officers. A search warrant issued for the given address, the residence of Brenda Allen, defendant's mistress. When the officers sought to make the search, they found no one present at this address. Information was later obtained on the same day that defendant could be found at the residence of George Wilson, 1725 Adams Street in Monroe. The officers proceeded to Wilson's residence where they found defendant Vassel and placed him under arrest for the murder of the liquor store employee, Feazel. Brenda Allen, who was at the residence at the time of Vassel's arrest, was also brought to the police station, and, during her interrogation concerning her knowledge of the crime, she told the officers that defendant admitted to her that he had shot a man during a robbery. She further advised the police officers that Vassel had given her the gun for safekeeping and, momentarily before the police arrived at Wilson's residence, she had hidden the pistol underneath a mattress in the home of Wilson at defendant's request.
The officers then returned to the Wilson home and were met by Wilson's mother, Johnnie Stark. Wilson and his wife were not present at this time. The mother spoke to the officers and, after signing a waiver, consented to the search of her son's residence. The pistol in question was found underneath a mattress as described by Brenda Allen. The weapon, together with a bullet removed from the victim and a bullet fragment removed from the scene of the crime, were matched in a ballistics test which established that both bullets had been fired from the weapon used by the defendant in the commission of the crime.
Defendant urges that Wilson's mother, Johnnie Stark, had no authority to consent to the search as she lived at another address and was visiting her son at 1725 Adams Street at the time she signed the waiver-consent allowing the officers to search the premises.
The question of consent and authority to consent is of no moment under the facts and circumstances of this case. Recently, the United States Supreme Court in Brown v. United States, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973), stated:
"In deciding this case, therefore, it is sufficient to hold that there is no standing *225 to contest a search and seizure where, as here, the defendants: (a) were not on the premises at the time of the contested search and seizure; (b) had no proprietary or possessory interest in the premises; and (c) were not charged with an offense that includes, as an essential element of the offense charged, possession of the seized evidence at the time of the contested search and seizure. * * * Petitioners were afforded a full hearing on standing and failed to allege any legitimate interest of any kind in the premises searched or the merchandise seized. Nor, incidentally, does the record reveal any such interest."
Defendant Vassel was not on the premises 1725 Adams Street at the time of the search and seizure, had no proprietary or possessory interest in the premises searched, was not charged with an offense which included, as an essential element of the offense charged, possession of the seized evidence (pistol) at the time of the contested search and seizure. Furthermore, defendant never alleged any legitimate interest in the weapon seized. Consequently, defendant is without standing to complain of the alleged illegal search and seizure herein. See State v. Rouse, 256 La. 275, 236 So.2d 211 (1970); State v. Page, 251 La. 810, 206 So.2d 503 (1968).
Bill of Exceptions No. 1 is without merit.
During the examination of prospective jurors, defendant sought to have a juror excused for cause because of a hearing impairment. When the judge denied the request, Bill of Exceptions No. 2 was reserved.
The trial judge states in his per curiam to this bill that he was personally acquainted with this juror who had contacted the court several days prior to the trial and sought a business exemption, to which he was not entitled. At no prior time had he mentioned or manifested any hearing impairment. Furthermore, during voir dire examination, the trial judge states that he observed him and listened carefully to his responses, actually varying volume and tone of voice while questioning him, and no unusual difficulty of hearing was perceptible. The judge concluded that the prospective juror was seeking to avoid jury duty, and his hearing problem, if any, was not apparent in any degree which could possibly affect his service. We find no error in the ruling of the trial judge.
In brief filed in this Court, defendant also argues that the trial court erred in denying his challenge for cause because this prospective juror knew some of the State's witnesses as well as the deceased.
The attached testimony to this bill indicates only a slight acquaintance with the witnesses and the deceased. Furthermore, no objection was made on this account in spite of extensive examination of the juror.
Article 800 C.Cr.P. provides that a defendant cannot complain of a ruling refusing to sustain a challenge for cause made by him, unless his peremptory challenges shall have been exhausted before the completion of the panel. There is no showing in this case that the defendant exhausted his peremptory challenges.
In State v. Amphy, 259 La. 161, 249 So. 2d 560 (1971), we stated:
"The trial court's failure to sustain a defendant's challenge of a juror for cause cannot be complained of on appeal, since the record does not show that the defendant's peremptory challenges were exhausted, La.C.Crim.P. Art. 800 (and moreover, for the reasons noted by its per curiam, the trial court's ruling was not incorrect) (Bill of Exceptions No. 10)."
Bill of Exceptions No. 2 is without merit.
Bill of Exceptions No. 3 was reserved to the ruling of the trial court in connection with the testimony of an officer of the *226 Monroe City police. The officer testified that, during the investigation, he called headquarters from the scene of the crime to give a description of the assailant. When questioned by the State as to the description he gave to headquarters, defense counsel objected. The objection was overruled, and this bill was reserved.
Defendant argues that the officer's testimony was hearsay. The State takes the position that he was only giving a description of the victim's assailant to headquarters which had been furnished him by another witness who had previously testified. Accordingly, the State asserts that the bill has no merit, and, even if it did, the error would be harmless.
The per curiam of the trial judge states that one of the witnesses had previously given the jury a description of the robber. Hence, even conceding that the testimony of the officer was hearsay, it was harmless error not resulting in a miscarriage of justice or prejudice to the defendant. See State v. Wilkerson, 261 La. 342, 259 So.2d 871 (1972); Article 921 of the Code of Criminal Procedure.
This bill lacks merit.
Bill of Exceptions No. 4 concerns objection by the defense to certain testimony given by a police officer relative to his investigation as a result of information given him by an informant. The objection is that the testimony is hearsay.
The questions propounded were solely for the purpose of ascertaining whether this officer acted upon information received by an informant. At no time did the witness reveal the contents or substance of what the informant told him. The per curiam correctly disposes of the contention as follows:
"The bill was actually reserved in mistaken anticipation that the State would request or the witness would reveal hearsay information. The witness had already been instructed not to relate what anyone had told him, and he did not do so. The particular question objected to did not seek to elicit hearsay, and the answer contained none. As it developed, the State was merely laying the foundation for the detective's action in obtaining a search warrant; and no objectionable facts were revealed."
State v. Favre, 255 La. 690, 232 So.2d 479 (1970) is clear authority to support the ruling of the trial judge that the testimony of the officer was not hearsay. However, in a subsequent Federal habeas corpus proceeding, the defendant in this case was granted relief.[1] Nevertheless, we feel that the present case is clearly distinguishable from the findings by the Federal courts in the Favre matter. The Fifth Circuit, in affirming the ruling of the district court, found objectionable that portion of the officer's testimony which related that "the information which [he] had previously received from these informants [had] been reliable" and had "in the past resulted in the conviction of persons." The court concluded that this was not harmless error since the prosecution had a questionable case; the testimony on the issues of identification and guilt may well have tipped the scales towards a guilty verdict. In the instant case, there was no reference to the reliability of the informant in the past, nor did the testimony relate to the identity or guilt of the defendant by the informant. Here, the officer's testimony relates only to the action taken by him in obtaining a search warrant resulting from the information received from the informant. Therefore, we conclude that this testimony had no prejudicial effect on any statutory or constitutional rights of the defendant, and, even if it did, it was certainly harmless.
The bill is without merit.
*227 Bill of Exceptions No. 5 was reserved when the trial court overruled the objection of defense counsel to an allegedly leading question asked by the State of its witness, Brenda Allen.
The question, which is the subject of this bill, is: "Did he [defendant] tell you where he had been or what he had done?" The question did not suggest an answer; therefore, it is not a leading question as defined by R.S. 15:277.
The bill is without merit.
When the State asked its witness, Mary Sue Jones, the following question and the objection of defendant thereto was overruled, Bill of Exceptions No. 6 was reserved:
"Q. Did you see Brenda Allen on Saturday, May the 13th of last year?"
Defendant urges that the question is leading and was prejudicial since the time factor was very important in the case, and the witness had no independent recollection of the exact date.
Even assuming that the question was leading, we find no merit in defendant's contention that prejudice resulted therefrom. Without explanation other than the mere conclusionary allegation that the exact time the witness encountered Brenda Allen was crucial, we are unable to reach any other conclusion but that the error, if any, was harmless.
This bill is without merit.
Bill of Exceptions No. 7 was taken to the introduction into evidence, over objection of defendant, of a bullet fragment taken from the door of a beer cooler at the scene of the crime. The objection is that it was not confirmed as being the same bullet fired by the assailant.
The testimony attached to this bill shows a chain of custody linking this bullet fragment to the crime. A witness to the crime related that the offender had fired a shot in the direction of the beer cooler. The officer who recovered the fragment from the beer cooler testified that he then took it to the crime laboratory in Shreveport where it was tested in connection with the pistol and a bullet taken from the body of the victim. Thereafter, he brought the evidence back to the police station in Monroe where it was retained in the evidence room until it was identified and offered in evidence by the evidence custodian on the day of the trial. Later, the expert from the crime laboratory further connected up the bullet fragment by testifying that the bullet taken from the victim's body and the bullet removed from the beer cooler were fired from the said pistol.
Accordingly, we find an unbroken chain of custody was clearly established by these witnesses. Furthermore, the evidence was certainly relevant. R.S. 15:435. Having established custody and relevancy, a proper foundation was laid for the admissibility of the bullet fragment. Article 773 of the Code of Criminal Procedure.
Bill of Exceptions No. 7 is without merit.
Bill of Exceptions No. 8 was reserved to the trial judge's acceptance of Ray Herd as a ballistics expert. Defendant simply contends that this witness was not sufficiently qualified to determine whether a bullet fragment came from a particular gun.
Mr. Herd is the supervisor of the Northwest Louisiana Criminalistic Laboratory. The witness testified that he had numerous degrees in chemistry. Prior to his present position, he was supervisor at the Louisiana State Police Crime Laboratory in Baton Rouge. Furthermore, he had been trained regularly in both police activities and crime laboratory procedures. He also studied ballistics for seven years under Major Louis Heard who is a Fire Arms Identification Expert with the State Police Bureau of Identification in Baton Rouge. He further testified that he had been accepted *228 as a ballistics expert in that court and other courts in the State of Louisiana on numerous occasions.
The test for qualification of experts is set forth in R.S. 15:466 which provides:
"The test of the competency of an expert is his knowledge of the subject about which he is called upon to express an opinion, and before any witness can give evidence as an expert his competency so to testify must have been established to the satisfaction of the court."
In view of Mr. Herd's impressive qualifications, the trial judge correctly accepted him as a ballistics expert. Competence of an expert is a question of fact to be determined by the trial judge. Much discretion is accorded in passing on the qualifications of an expert witness which will not be disturbed in the absence of manifest error. State v. Washington, 256 La. 233, 236 So.2d 23 (1970).
This bill is without merit.
Bill of Exceptions No. 9 was reserved when the court overruled defendant's objection to the introduction into evidence of the pistol recovered from the house of George Wilson located at 1725 Adams Street.
Defendant argues that the witness, Mary Sue Jones, could not identify the pistol admitted into evidence as the one she saw in Brenda Allen's possession shortly after the commission of the crime; furthermore, the State did not lay the proper foundation for the introduction of this pistol.
It was established by the testimony that Brenda Allen was given possession of the gun by the defendant who told her to put it away just prior to the arrival of the detectives. They were at George Wilson's house located at 1725 Adams Street at the time. She placed the pistol under the mattress and later told the police where it was located. The police officer who recovered the gun testified that he took it to the Northwest Criminalistic Laboratory in Shreveport for a ballistics test and thereafter brought it back to Monroe where he turned it over to the custodian officer of evidence who retained possession of the pistol until identified and offered into evidence on the day of the trial. Mr. Ray Herd, supervisor of said Crime Lab, testified that he tested the pistol, together with the bullet taken from the victim's body, as well as the one removed from the beer cooler and opined that both bullets were fired from said pistol. Furthermore, the witnesses at the scene of the crime generally described the weapon used by the assailant as similar to the pistol in question.
A continuous chain of custody was clearly established, and there can be no doubt as to the relevancy of the pistol. Therefore, a proper foundation was laid for admitting the pistol into evidence.
Concerning the assertion that Mary Sue Jones could not identify the pistol, it is of no significance in light of the other evidence. She had been with Brenda Allen on the night that the defendant turned it over to her for safekeeping. She had only observed the pistol momentarily when Brenda Allen was wiping it off in the bathroom at Jimmy's Lounge. Furthermore, connexity is a matter for the jury to decide, so long as the object introduced is shown to the satisfaction of the trial judge to have some relevance, i. e., some logical or rational connection with the fact sought to be proved. State v. Dillon, 260 La. 215, 255 So.2d 745 (1971). Accordingly, this objection addresses itself to the weight of the evidence rather than to its admissibility.
This bill is without merit.
Bill of Exceptions No. 10 deals with the attorney-client privilege. The circumstances under which this objection, the subject of this bill, arose is as follows:
On direct examination, the defendant had testified in reference to an alibi, i. e., that at the time of the crime he *229 was with a "Mr. Fats." Noting that such a person had not testified and was not among the witnesses listed, the State asked defendant if he had mentioned Mr. Fats to his attorney; if an attempt had been made to learn his true name; and whether he had requested that a subpoena issue for him.
After allowing all of these questions to be asked and answered without objection, defense counsel stated:
"Your Honor, these are normally privileged information, the fact that an attorney has to talk to a client and the old man is senile. The prosecution is"
Whereupon, the prosecutor objected to counsel for defendant testifying. The trial judge admonished counsel to state objections and/or arguments, but to refrain from personal comments to each other. Counsel for defendant then stated the following:
"Your Honor, I'll just make an objection to the attorney-client relationshipfor reasons known only to me why I couldn't subpoena him."
It was the view of the trial judge that not only was the objection tardily made, but it was without merit since the State could properly inquire as to the identity and whereabouts of an alleged witness referred to by defendant in his testimony in chief as establishing an alibi. The per curiam additionally states:
"Moreover, as intimated by counsel for the state, it may well be concluded that the true purpose of the objection was to get before the jury defense counsel's unsworn explanation of this person's absence."
The attorney-client privilege is provided for in R.S. 15:475, and this section recites:
"No legal adviser is permitted, whether during or after the termination of his employment as such, unless with his client's express consent, to disclose any communication made to him as such legal adviser by or on behalf of his client, or any advice given by him to his client, or any information that he may have gotten by reason of his being such legal adviser."
It is thus evident that the provisions of this section dealing with attorney-client privilege are not appropriate to the objection raised herein. At no time did the defendant object. In fact, he readily answered the questions of counsel for the State.
Furthermore, since defendant testified in chief as to an alibi by the presence of a witness known to him as "Mr. Fats" he opened the door to interrogation concerning this matter on cross-examination.
R.S. 15:280 provides:
"When a witness has been intentionally sworn and has testified to any single fact in his examination in chief, he may be cross-examined upon the whole case."
Bill of Exceptions No. 10 is without merit.
During the course of the trial, defense witnesses testified as to the presence of defendant at locations other than the scene of the crime a short time before and after the occurrence of the crime. This was in support of defendant's assertion of an alibi.
The State, in an attempt to demonstrate the possibility of defendant's presence at these locations, as well as at the liquor store where the crime took place, called a police officer to the stand. When this officer identified a portion of the city map to depict the areas involved and marked on this map the route he walked, objection was made. Later, when the State offered this marked map in evidence, defense counsel again objected. These objections are the basis of Bill of Exceptions No. 11.
In brief filed in this Court, defendant urges that the testimony of this officer concerning the speculative route or *230 routes that defendant could have taken was inadmissible evidence and gave the impression that defendant had committed the crime. It is urged that whatever probative value the evidence had did not outweigh the prejudice which it caused defendant.
The per curiam ably answers this contention:
"In view of defendant's alleged alibi, the state could properly attempt to demonstrate that the critical time interval was sufficient to permit acceptance of his evidence and still allow him an opportunity to commit the crime. The walk along a logical route was a permissible method for this attempt; and the route selected was reasonable. By use of the map, the officer could and did show the jury precisely the route he followed; and the jury could much more intelligently evaluate the validity of the experiment, locate the places and distances, weigh the entire evidenceboth the state's and the defendant's."
No prejudice, under these circumstances, has been shown by the defendant.
This bill is without merit.
Bill of Exceptions No. 12 encompasses two objections made to the closing argument of the State.
The first objection was made to comments made during the State's rebuttal argument when the District Attorney referred to defendant's attempt to escape through the back door of Wilson's home at the time of his arrest. The basis of the objection is that the matter was not covered during defendant's closing argument. In his brief filed in this Court, defendant does not dispute that evidence on this matter of escape was actually received during the trial.
Article 774 of the Code of Criminal Procedure provides:
"The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
"The argument shall not appeal to prejudice.
"The state's rebuttal shall be confined to answering the argument of the defendant."
The trial judge states in his per curiam that, while the specific evidence was not mentioned in defense's closing argument, it was relevant to the whole issue of guilt and as rebuttal of defense argument of alibi and reasonable doubt. Since defendant argued alibi and reasonable doubt in his closing argument, comments regarding defendant's attempt to escape was proper rebuttal argument by the State. Thus, the objection is without merit.
Next defense counsel objected to comments made by the State in the closing argument regarding the ban of the death penalty by the United States Supreme Court as announced in Furman v. Georgia,[2] and the further comment, viz:
"Nine (9) men in Washington said they knew more about what punishment was right than the Lord did when he said, `An eye for an eye and a tooth for a tooth.' Well, we are governed right now gentlemen by the nine (9) men, unfortunately not by the Lord. We didn't ask you for a death penalty in this case simply because it was not available. If I could ask you to put this man in the electric chair gentlemen, I'd be on my knees begging you to do it because I submit he deserves it."
Defendant submits in his brief that these remarks made by the prosecution were not only inflammatory, but also highly prejudicial and totally without cause. The reference to the comparison between the Supreme Court of the United States and God is contended to be improper.
*231 Although not a part of the record, the State asserted in argument that the remark about Furman v. Georgia was in answer to statements made by defense counsel in his argument. The per curiam makes some reference to this as follows:
"The second objection was made to comments in argument of the state regarding the death penalty. In defense argument, reference was made to the penalty of life imprisonment in connection with comments about reasonable doubt. Counsel for the state, in disclaiming the existence of any doubt, was explaining why the death penalty was not being sought in order that the jury might not assume a choice of penalty had been made by the state. * * *"
We, therefore, conclude that the remarks made by the State in reference to the death penalty were in answer to the statement made by defense counsel and are not improper. Furthermore, we do not consider that defendant was prejudiced thereby.
The bill is without merit.
Bill of Exceptions No. 13 was taken when the trial judge overruled the motion for a new trial. This motion raises the objections already disposed of in the bills of exceptions herein discussed and adds the ground that the verdict is contrary to the law and evidence. This allegation presents no question of law for our review. State v. Grey, 257 La. 1070, 245 So.2d 178 (1971).
In denying the motion for a new trial, the trial judge states in his per curiam:
"Moreover, as will be seen from review of the other bills of exception the testimony of Brenda Allen and the ballistics expert, when coupled with that of the eye witnesses, was more than adequate to support the verdict of the juryeven if no other evidence were considered. Accordingly, to grant the motion for new trial on this ground would require a judge, trial or appellate, blandly to usurp the jury function and substitute his own evaluation of the weight and credibility of the evidence."
The motion for a new trial requests a complete transcript of the entire trial. A separate motion for a complete record was also filed. Defendant was furnished all portions of the transcript necessary for consideration of the perfected bills of exceptions. This Court does not review the entire transcript of the proceedings upon the averment that the verdict is contrary to the law and evidence. Therefore, the trial judge properly denied this request. State v. Brewer, 263 La. 113, 267 So.2d 541 (1972).
Bill of Exceptions No. 13 is without merit.
For the reasons assigned, the conviction and sentence are affirmed.
BARHAM and DIXON, JJ., concur.
NOTES
[1] See Favre v. Henderson, 318 F.Supp. 1384 (D.C.1970) and Favre v. Henderson, 464 F. 2d 359 (5 Cir., 1972), cert. den., 409 U.S. 942, 93 S.Ct. 235, 34 L.Ed.2d 193.
[2] 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).