532 So.2d 429 (1988)
STATE of Louisiana
v.
William GARNER.
No. KA 88 0163.
Court of Appeal of Louisiana, First Circuit.
October 12, 1988.
*430 Bryan Bush, Dist. Atty., Baton Rouge, by Richard Sherburne, Asst. Dist. Atty., for plaintiff/appellee.
Office of the Public Defender, Baton Rouge, for defendant/appellant.
Before WATKINS, CRAIN and ALFORD, JJ.
ALFORD, Judge.
The defendant, William Garner, was charged by bill of information with five counts of armed robbery, in violation of La.Rev.Stat. 14:64. He pled not guilty and, after trial by jury, was found guilty as charged on all five counts. For each armed robbery conviction, the defendant received a sentence of forty years at hard labor, without benefit of parole, probation, or suspension of sentence. These five sentences were imposed concurrently. The defendant has appealed, alleging nine assignments of error, as follows:
1. The trial court erred in ruling, over defense objection, that the prosecution laid a proper foundation for the introduction of evidence surrounding the lineup.
2. The trial court erred in denying the defendant's motion for a mistrial.
3. The trial court erred in overruling a defense objection to the prosecutor's questioning of a witness.
4. The trial court erred in overruling the defendant's objection to the prosecutor's questioning of a witness.
5. The trial court erred in denying the defendant's request for a recess.
6. The trial court erred when it sustained State's objection and denied the defense request to have an excerpt of defense's closing argument transcribed for purposes of appeal.
7. The trial court erred in sustaining a state objection to defense counsel's closing argument.
8. The trial court erred in imposing an excessive sentence and in failing to comply with the sentencing guidelines of La.Code Crim.Proc. art. 894.1.
9. The evidence was insufficient to support the defendant's convictions.
Assignments of error numbers 1, 2, 3, 4, 5, and 6 were not briefed on appeal and, therefore, are considered abandoned.[1] Uniform RulesCourts of Appeal, Rule 2-12.4.
In a twelve-day period during the summer of 1986, the defendant participated in armed robberies at three different business establishments in Baton Rouge, Louisiana. At approximately 10:00 A.M. on June 30, 1986, the defendant and two other black males committed armed robbery at the Vel Rose Motel on Airline Highway. There were three employees in the office when the robbery took place. The manager, Donald Fritcher, was in a room in the back of the office. Glenda Deshotels, the receptionist, and Lenora Crumholt, who worked in the lounge, were in the front of the office, along with Kenneth Waguespack, a friend of Mr. Fritcher. The first robber entered the office, pointed a gun at Mr. Waguespack, and ordered him to get on the floor. Shortly thereafter, the defendant entered with another accomplice. The defendant *431 pointed a gun at Ms. Crumholt, ordered her to get to her knees, and held her shoulder with his other hand. The first robber who entered the office then went to a room key deposit box and removed the money inside, which was later estimated to be approximately $10.00. Meanwhile, Ms. Deshotels panicked and fled into the back of the office and outside through a rear door. The third robber chased Ms. Deshotels into the back of the office. As she escaped, this third robber confronted Mr. Fritcher. He pointed a gun at Mr. Fritcher, who dropped to the floor. The robber ran to the front of the office and informed the others that there were more people in the back, whereupon all three robbers fled.
Mr. Fritcher and Mr. Waguespack went to the parking lot, got into their cars, and chased the robbers, who fled in a red Oldsmobile Cutlass. After a brief chase, the robbers managed to elude Mr. Fritcher and Mr. Waguespack by running several redlights. However, Mr. Fritcher and Mr. Waguespack were able to give a description of the vehicle and a partial license plate number to the police.
At approximately 10:45 A.M. on July 9, 1986, the defendant and two other black males committed armed robbery at the Taco Bell Restaurant located at Florida Boulevard and Sharp Lane. The manager, Ronald Marshall, and two other employees, Darlene and Darryl Lathers, were in the restaurant when the robbery took place. The defendant entered the restaurant first, armed with a handgun. The other two accomplices entered the restaurant at short intervals. The defendant ordered Ms. Lathers to empty the cash register. The second robber went in the back of the restaurant and pointed a gun at Mr. Lathers. He then entered the office, where Mr. Marshall was talking on the phone. The second robber struck Mr. Marshall on the head with his pistol and hung up the phone. He forced Mr. Marshall to open the safe and remove the money inside. He then ordered Mr. Lathers and Mr. Marshall into the cooler. Meanwhile, on instructions from the defendant, Ms. Lathers emptied the three cash registers and gave the money to the defendant. At this point, the third robber entered the restaurant and alerted the others that a customer was approaching. Ms. Lathers was forced into the cooler with the others, and the three robbers fled.
At approximately 8:30 A.M. on July 11, 1986, the defendant and two other black males committed armed robbery at the Burger King restaurant located on Airline Highway. During the robbery, there were at least six employees and at least four customers inside the restaurant. One of the robbers ordered the cashier, Janice Ardoine, to empty the three cash registers in the front. She got the key to the cash registers from the manager, Stanley Norton, who was in the back of the restaurant. Mr. Norton, who was being held at gunpoint by one of the robbers, gave Ms. Ardoine the key and instructed her to give them whatever they wanted. The robber in the front of the restaurant helped Ms. Ardoine as she opened and emptied the three cash registers. All of the employees were forced into the cooler at gunpoint, except Ms. Ardoine, who was in the front opening the cash registers. While inside the cooler, at least one employee, Greg White, was forced at gunpoint to surrender his wallet.
The defendant confronted three customers, Robert Shelton, Louis Fletcher, and Jim Duncan, and ordered them to the back of the restaurant. While being held at gunpoint, these three men were ordered to surrender their money and/or wallets and were also placed inside a cooler. Another customer, Johnny McEachern, walked into the restaurant and saw the robbers leaving through a door in the back marked "Employees only." The defendant pointed a gun at him and ordered him to get down on the floor. Mr. McEachern observed the robbers as they fled. He later reported to the police that the robbers had fled in a maroon Oldsmobile Cutlass automobile and supplied them with its license plate number. This vehicle, which had been stolen, was later recovered. The defendant's fingerprints were found on this vehicle.
*432 ASSIGNMENT OF ERROR NUMBER SEVEN:
In this assignment of error, the defendant contends that the trial court erred in sustaining the prosecutor's objection to defense counsel's closing argument. The defendant argues that this improper restriction of defense counsel's closing argument prevented him from properly commenting on the eyewitness identification evidence which had been introduced by the State.
During defense counsel's closing argument, the following colloquy occurred:
DEFENSE COUNSEL:
There is an old saying that somewhere in the world we all have a twin. I'm going to close and tell you a little story. There was a real good friend of mine that left Louisiana and moved up to Coloradothis is on eyewitness identification evidenceand he lived in a little town outside of Keystone and he was in a bar one night with three hundred people, two deputies walked in, they saw him sitting there and they walked right around to him (sic) said, `Excuse me, could you come out and talk to us?'
PROSECUTION:
Your Honor, I'm going to object to this at this time. I normally wouldn't, but it seems to me that we're about to get into a factual situation that is not related to this case. If Mr. Knight wanted to talk about this situation in relation to the evidence in this case, he could have brought the friend in and have him take the stand. He probably could have even taken the stand himself and put it into evidence, and he has not commented on the evidence, now.
DEFENSE COUNSEL:
It's to me, Judge a very fair argument on the fallacythe fallibility of eyewitness identification.
THE COURT:
All right, it is not argument of evidence introduced in the case. I'll sustain the objection.
La.Code Crim.Proc. art. 774 provides, in pertinent part:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The trial court is accorded wide discretion in confining the closing arguments of counsel to the scope of the evidence. State v. Weathers, 320 So.2d 895, 899 (La.1975). Generally, defense counsel is allowed wide latitude in closing argument; and any undue restriction which limits argument to the prejudice of the defense is error. Where such prejudice is substantial, a reversal is warranted. State v. Joseph, 341 So.2d 861, 867 (La.1977).
While only the above quoted portion of defense counsel's closing argument to the jury was transcribed, we can conclude that defense counsel was trying to convey to the jury the idea that eyewitness identification evidence is not infallible. However, this "little story" which defense counsel attempted to relate to the jury was admittedly a matter of defense counsel's personal experience. It was not derived from facts introduced in evidence, nor was it a matter of common knowledge. Therefore, defense counsel's "little story" was not within the proper scope of closing argument. See State v. Weathers, 320 So.2d at 899. See also State v. Taylor, 430 So.2d 686, 691, 692 (La.App. 2d Cir.), writ denied, 438 So.2d 575 (La.1983). We find no abuse of discretion in the trial court's ruling.
ASSIGNMENT OF ERROR NUMBER NINE:
In this assignment of error, the defendant contends that the evidence was insufficient to support the instant armed robbery convictions.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt. See La.Code Crim.Proc. art. 821; State v. Johnson, 461 So.2d 673, 674 *433 (La.App. 1st Cir.1984); State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983).
La.Rev.Stat. 14:64 provides, in pertinent part:
A. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
In his brief to this Court, the defendant contends that there are certain factors which, although overlooked by the State in its presentation of the case against the defendant, tend to create a reasonable doubt as to his guilt. The defendant argues that only one out of twenty people who viewed the physical lineup were able to identify the defendant. This contention is incorrect. Both Kenneth Waguespack and Lenora Crumholt identified suspect number four (the defendant) from the lineup as being one of the three participants in the Vel Rose Motel robbery on June 30, 1986.[2] Both Mr. Waguespack and Ms. Crumholt also identified the defendant in court as one of the three gunmen.
Both Darryl Lathers and Darlene Lathers identified the defendant from the lineup as being one of the three participants in the Taco Bell robbery on July 9, 1986.[3] Furthermore, both Darlene Lathers and Ronald Marshall identified the defendant in court as one of the three men who robbed the Taco Bell on July 9, 1986.
Finally, Cenobe Hollins identified suspect number four (the defendant) from the lineup as being one of the three men who robbed the Burger King on July 11, 1986. Immediately after the burglary, Ms. Hollins had informed the police that she knew the defendant had run track at Glen Oaks High School. A Glen Oaks yearbook was located, and Ms. Hollins identified the defendant's picture in the yearbook. She also identified the defendant in court. Additionally, Johnny McEachern, Robert Shelton, and Louis Fletcher also made in-court identifications of the defendant as being one of the three participants in the Burger King robbery.
The defendant also argues that, while the State proved that a stolen vehicle was used to commit the instant robberies, the prosecution failed to emphasize that the defendant was never charged with stealing the vehicle. The defendant states: "It seems logical that if there was enough evidence to charge [the defendant] with the armed robberies, there should have been sufficient evidence to charge him with the crime of stealing the car."
Whether or not the State elected to prosecute the defendant for stealing the car had absolutely nothing to do with the instant case. The State proved through the eyewitness testimony of several witnesses that the defendant was one of the participants in the Burger King robbery. Furthermore, the defendant's fingerprints were found on the stolen maroon Oldsmobile Cutlass automobile[4] in which the robbers escaped after the Burger King robbery. It was not necessary to charge the defendant with stealing the car in order to convict him of armed robbery.
Finally, the defendant contends that the State was unable to demonstrate a motive *434 for these robberies. The State is only required to prove, beyond a reasonable doubt, each and every element of an offense. Motive is not an element of the offense of armed robbery, nor is the State required to prove what motive, if any, the defendant had when he committed these robberies.
The defendant testified that he did not commit the instant armed robberies and that he did not know who did commit them. Through the testimony of several defense witnesses, the defendant established that he lived with his grandmother, Albertha Bell, in June and July of 1986. Through the alibi testimony of two defense witnesses, the defendant attempted to establish that he could not have participated in the robberies of the Vel Rose Motel on June 30, 1986, and the Burger King on July 11, 1986. Albert Fortune testified that he observed the defendant lifting weights on his grandmother's porch at approximately 8:12 A.M. on July 11, 1986, the morning of the Burger King robbery. Albert Dixon testified that, on June 30, 1986, he went to Ms. Bell's house and lifted weights with the defendant from approximately 8:30 A.M. to 11:00 or 11:30 A.M.
Nevertheless, the jury, in returning the instant guilty verdicts, clearly chose to believe the eyewitness testimony of the prosecution witnesses while rejecting the alibi testimony of the defense witnesses. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31, 38 (La. App. 1st Cir.1984).
After a careful review of the record, we believe that a rational trier of fact, viewing all of the evidence as favorably to the prosecution as any rational factfinder can, could have concluded that the State proved beyond a reasonable doubt that the defendant was guilty of all five counts of armed robbery. See State v. Mussall, 523 So.2d 1305 (La.1988).
ASSIGNMENT OF ERROR NUMBER EIGHT:
In this assignment of error, the defendant contends that the trial court erred in failing to consider the guidelines of La. Code Crim.P. art. 894.1 and in imposing an excessive sentence.
The Code of Criminal Procedure sets forth generally, the guidelines which must be considered by the trial court in imposing sentence. La.Code Crim.Proc. art. 894.1. The trial court need not recite the entire checklist of Article 894.1, but the record must reflect that it adequately considered the guidelines. State v. Davis, 448 So.2d 645, 653 (La.1984). In light of the criteria expressed by Article 894.1, a review for excessiveness of the individual sentence must consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. State v. Lewis, 489 So.2d 1055, 1061 (La.App. 1st Cir.), writ denied, 493 So.2d 1218 (La.1986).
Although a sentence falls within statutory limits, it may be excessive. State v. Sepulvado, 367 So.2d 762 (La.1979). However, the trial court has wide discretion in the imposition of sentences; and a sentence within statutory limits will not be set aside in the absence of an abuse of discretion. State v. Louis, 496 So.2d 563, 568 (La.App. 1st Cir.1986).
Before imposing sentence, the trial court indicated that it had reviewed the presentence investigation report. The report indicated that, although the instant convictions were the defendant's first adult convictions, he had a juvenile record involving crimes against the person. At age fifteen, the defendant was arrested for simple battery. He was counseled and warned. At age seventeen, the defendant was arrested for four counts of attempted first degree murder. He was adjudicated a delinquent on the charge of illegal discharge of a firearm and received a suspended sentence of two years at the Louisiana Training Institute.
In his brief to this Court, the defendant contends that certain mitigating factors, "[c]oupled with the weak evidence upon which the [defendant's] convictions are based," render the instant sentences excessive. Specifically, the defendant cites as mitigating factors his youthful age, lack of a prior adult record, and the fact that none *435 of the victims were physically injured. To the contrary, we note that the eyewitness testimony in this case clearly established the defendant's participation in the instant armed robberies. Furthermore, although he was not seriously injured, Mr. Marshall was struck on the head with a gun by one of the gunmen (not the defendant) during the Taco Bell robbery. We also note that, during the commission of these armed robberies, no less than seventeen people, who were employees and customers of these three business establishments, were confronted at gunpoint by the defendant and/or his accomplices. While no one was seriously injured, as the defendant points out, the potential for serious harm to employees, customers, bystanders, law enforcement personnel, and even the robbers themselves, was trememdous. In fact, the robbery of the Vel Rose Motel led to a high speed chase of the getaway car through some of the busier streets in the city.
Finally, we note that the trial court considered the defendant's youthful age and his lack of a prior adult record as mitigating factors. However, the trial court concluded that the seriousness of the offenses and the aggravating circumstances outweighed the mitigating factors. The trial court concluded that the defendant was in need of correctional treatment and that any lesser sentence would deprecate the seriousness of the offenses.
For his conviction of five counts of armed robbery, the defendant was exposed to a maximum sentence of four hundred ninety-five years at hard labor. See La.Rev.Stat. 14:64 B. The defendant received five concurrent sentences of forty years at hard labor for these convictions. Considering the circumstances of the offenses and the reasons for sentencing given by the trial court, we find no abuse of discretion in the sentences imposed.
For the reasons assigned, the conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] In assignment of error number six, the defendant alleged that "the trial court committed error when it sustained State's objection and denied the defense request to have an excerpt of defense's closing argument transcribed for purposes of appeal." This assignment of error is confusing and inaccurate. The prosecutor's objection was directed toward defense counsel's closing argument, not toward the transcription of defense counsel's closing argument. Although the defendant did not list his closing argument in his designation of the record for appeal, the excerpt of defense counsel's closing argument to which the prosecutor objected was transcribed and included in the record after an oral request by defense counsel.

In any event, the defendant's brief to this Court, which included a combined argument on assignments of error numbers six and seven, did not address assignment of error number six. Therefore, assignment of error number six is considered abandoned. Moreover, since the excerpt of defense counsel's closing argument was transcribed and included in the record, assignment of error number six is meritless.
[2] At the lineup, Mr. Fritcher identified suspect number three. At the trial, however, Mr. Fritcher explained that he had seen all three of the robbers, but only believed that he could identify one of them. He testified that the one whom he believed he could identify was not present in court.
[3] At the lineup, Mr. Marshall identified suspect number one. At the trial, however, Mr. Marshall explained that, at the lineup, he was "more or less concentrating on the guy that came in the office." It is clear from this explanation that Mr. Marshall was attempting to identify the gunman who confronted him in the office, rather than the defendant, who remained in the front of the restaurant during the robbery.
[4] There were two Oldsmobile Cutlass automobiles involved in the instant robberies. A red, Oldsmobile Cutlass automobile was used as the getaway car in the Vel Rose Motel robbery. This was the vehicle chased by Mr. Waguespack and Mr. Fritcher. From the trial testimony, it appears that this vehicle was stolen, but the evidence on this point is not clear. The robbers also used a maroon, Oldsmobile Cutlass automobile as the getaway car in the Burger King robbery. The trial testimony clearly established that this vehicle had been stolen.