572 So.2d 1131 (1990)
STATE of Louisiana
v.
Rodney C. CARTER.
No. 89 KA 2067.
Court of Appeal of Louisiana, First Circuit.
December 18, 1990.
*1133 Lonny Myles, Zachary, for defendant-appellant.
John L. Stone, III, Asst. Dist. Atty., Amite, for plaintiff-appellee.
Before EDWARDS, WATKINS and LeBLANC, JJ.
WATKINS, Judge.
The defendant, Rodney C. Carter, was charged by grand jury indictment with second degree murder, in violation of LSA-R.S. 14:30.1. He pled not guilty and, after trial by jury, was found guilty of the responsive offense of manslaughter, a violation of LSA-R.S. 14:31. He received a sentence of twenty years at hard labor. Subsequently, this Court granted the defendant an out-of-time appeal. Defendant alleges nine assignments of error, as follows:
1. The trial court erred in excusing a prospective juror.
2. Prejudicial and inflammatory remarks by the prosecutor during opening argument warranted a mistrial.
3. The trial court erred in restricting the defendant's cross-examination of a witness.
4. The trial court erred in allowing the prosecutor to ask questions of the defendant which violated the attorney-client privilege.
5. The prosecutor's intentionally misleading remarks during closing argument warranted a mistrial.
6. The defendant is entitled to a new trial because the trial court was prejudiced against him.
7. The evidence was insufficient to support the instant conviction.
8. The trial court erred in failing to comply with the sentencing guidelines of La.C.Cr.P. art. 894.1.
9. The trial court erred in imposing an excessive sentence.
At approximately 10:45 p.m. on May 4, 1983, the defendant's wife, Diane Carter, was shot to death outside her home on Harrell Street in Hammond, Louisiana. The victim's first cousin, Gwendolyn Anderson, was the only eyewitness to this shooting. Ms. Anderson testified that she was at the victim's house that evening when the defendant, armed with a pistol, burst into the back door and began threatening the victim. The victim and the defendant struggled. Ms. Anderson was pushed through the front door. Shortly thereafter, the victim exited the front door, followed by the defendant. The defendant was in a rage and was cursing and screaming at the victim. Although the victim asked the defendant not to kill her, he approached her and shot her twice in the head.
A next door neighbor, Bernice Evans, heard two gunshots but did not witness the shooting. When she looked outside and observed that the victim had been shot, she called the police.
The defense suggested, during the cross-examination of Ms. Anderson, that someone other than the defendant had shot the victim. Defense counsel questioned Ms. Anderson about a family argument concerning which family member would move into the victim's house if the victim and the defendant moved to Florida. However, Ms. Anderson denied knowledge of any such family dispute. Defense counsel also questioned Ms. Anderson about possible criminal charges filed by the victim against one of the fathers of the victim's other children. Ms. Anderson explained that the defendant *1134 and the victim had one child and that the victim had three children before she married the defendant. However, the prosecutor's objection to this line of questioning prevented an answer by Ms. Anderson.
The defendant testified that he had been separated from the victim for two or three days when the shooting occurred. He had moved his clothes and a stereo system to the house of a friend, Willie Gulley. The defendant testified that he did not shoot his wife. He explained that, at the time of the shooting, he was in the "projects" with a friend known only by his nickname, "Pub." The defendant explained that he left the projects at approximately 11:00 p.m. and went to drink beer at two different bars, Touchdown Lounge and Green Acres. From Green Acres, the defendant got a ride to a truck stop on Interstate 12. Thereafter, he decided to return to his original home in Florida and got a ride to a truck stop in Jackson County, Mississippi, with two men in a chemical transport truck. The defendant testified that he stayed at this truck stop in Mississippi for approximately two and one-half days. During this time, he tried to call home and to call a friend, Nathaniel Jackson, but was unable to contact anyone. Thereafter, the defendant called his mother in Florida and learned that he was wanted by the Hammond Police for shooting his wife. The defendant telephoned his two brothers in Florida; they picked him up and took him to the police station in Hammond, where he surrendered to the authorities.
The defendant explained that Ms. Anderson's testimony that he shot the victim was untrue. The defendant also explained that Charles Kimball, the father of one of the victim's children, had threatened the victim when he learned that she was taking legal action to force him to pay child support. The defendant also testified about a family argument over the issue of who would move into the house if he and the victim moved to Florida.

ASSIGNMENT OF ERROR NUMBER ONE:
In this assignment of error, the defendant contends that the trial court erred in excusing a prospective juror, Brenda C. Ballard, during voir dire examination. Specifically, he argues that her responses indicated she would have been a good juror.
The voir dire transcript does not indicate whether this prospective juror was excused after a challenge for cause by the defendant, after a challenge for cause by the State, or on the trial court's own motion. In any event, excusing the prospective juror was not an error which prejudiced defendant. If Ms. Ballard was excused pursuant to a challenge for cause by the defendant, then he has no grounds for complaint on appeal. Nor does the erroneous allowance to the State of a challenge for cause afford the defendant a ground for complaint, unless the effect of such a ruling is the exercise by the State of more peremptory challenges than it is entitled to by law. LSA-C.Cr.P. art. 800 B; State v. James, 431 So.2d 399 (La.), cert. denied, 464 U.S. 908, 104 S.Ct. 263, 78 L.Ed.2d 247 (1983). The minutes indicate that the State exercised only three peremptory challenges during voir dire. Therefore, if Ms. Ballard was challenged for cause by the State, the defendant may not complain of alleged trial court error in granting his challenge for cause.
During voir dire examination, Ms. Ballard indicated that she and her husband were self-employed and owned three package liquor and gas stations. She also indicated that she had two small children. When asked if her service as a juror would cause trouble with business, she indicated that it would because there was no one to take her place at work. She also stated that, if selected as a juror, she might be unable to give the case the attention it deserved because she would be concerned about her business. She further explained that her mother-in-law normally took her place at work and that her mother-in-law would be unable to do so at that time. She further stated that she could not guarantee she would keep her full attention on the trial. Contrary to the defendant's argument, Ms. Ballard's inability to find a suitable *1135 replacement at work could have affected her performance as a juror.
The trial court may excuse a member of the petit jury venire at any time prior to the time he is sworn as a juror to try a particular case. LSA-C.Cr.P. art. 783 A. The trial court is authorized to excuse a person from jury service either prior to or after his selection for the general venire if such service would result in undue hardship or extreme inconvenience. The trial court may take such action on its own initiative. LSA-C.Cr.P. art. 783 B; State v. Brown, 414 So.2d 726 (La.1982). The trial court has broad discretion in excusing prospective jurors prior to the time they are sworn to try a particular case. State v. Ivy, 307 So.2d 587 (La.1975). Assuming the trial court excused Ms. Ballard on its own motion because of her responses during voir dire examination, we find no abuse of discretion.
For the above reasons, this assignment of error is meritless.

ASSIGNMENTS OF ERROR NUMBERS TWO AND FIVE:
In these assignments of error, the defendant contends that he was entitled to a mistrial for the prejudicial, inflammatory, and misleading remarks by the prosecutor during his opening statement and closing argument. Specifically, in assignment of error number two, the defendant contends that, in his opening statement, the prosecutor referred to the murder as "gruesome," "terrible," and "simplistically gruesome," and also made a reference to the victim's "bullet riddled head and body." In assignment of error number five, the defendant complains that, during his closing argument, the prosecutor misled the jury when he stated that the City of Jackson, Mississippi, was located in Jackson County, Mississippi.
In the opening statement the state explains the nature of the charge, and sets forth, in general terms, the nature of the evidence by which it expects to prove the charge. LSA-C.Cr.P. art. 766.
If the prosecutor's argument goes beyond permissible grounds, Louisiana law provides sanctions. LSA-C.Cr.P. arts. 770 and 771; see State v. Deboue, 496 So.2d 394 (La.App. 4th Cir.1986), writ denied, 501 So.2d 229 (La.1987). However, defense counsel chose not to object to the prosecutor's opening statement, nor did he request an admonition or a mistrial. Instead, during defense counsel's opening statement, he specifically informed the jury that the prosecutor referred to the murder as gruesome three times in his opening statement and that, by doing so, the prosecutor was attempting to influence the jury. Assuming that the remarks in the prosecutor's opening statement were improper, we conclude that any prejudice caused thereby was countered when, during his opening statement, defense counsel made direct reference to the prosecutor's attempt to inflame the jury.
The scope of closing argument in Louisiana is governed by LSA-C.Cr.P. art. 774 which provides:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state's rebuttal shall be confined to answering the argument of the defendant.
During cross-examination, the prosecutor questioned the defendant about his ride to Jackson County, Mississippi. He mistakenly indicated that Jackson County is where the City of Jackson, Mississippi, is located and further indicated that this location was not in the direction of Florida. The defendant did not contradict the prosecutor's mistake; he merely explained that he was trying to hitchhike to Florida. From an examination of the record, it appears that, during his closing argument, the prosecutor's remarks about Jackson and Jackson County, Mississippi, were made in an attempt to suggest that the defendant did not head east toward Florida, but headed north to Jackson, Mississippi.
Jackson County, Mississippi, is east of Hammond, Louisiana; it is located on the *1136 Gulf Coast, and it does not contain the City of Jackson, Mississippi. Yet, we note that the prosecutor made this same mistake about the location of Jackson County, Mississippi, both in his cross-examination of the defendant and in his closing argument. Therefore, we conclude that the prosecutor simply misstated a fact and did not deliberately mislead the jury. Considering the entire record, we find that the prosecutor's erroneous remarks during closing argument did not influence the jury to the extent that these statements contributed to the verdict. In making this determination, we specifically note that, both in its opening remarks and its final jury instructions, the trial court informed the jury that the opening statements and closing arguments of counsel were not to be considered as evidence.
The issue as to the propriety of remarks made in closing argument is not preserved for review on appeal where defense counsel makes no objection to the statement either during argument or immediately after the argument. State v. Hookfin, 476 So.2d 481 (La.App. 1st Cir.1985). In this situation, the defendant did not object to the prosecutor's closing argument remarks about Jackson and Jackson County, Mississippi, nor did he request an admonition or a mistrial. Therefore, assuming the remarks were misleading and improper, we find that the defendant is deemed to have waived any such error on appeal. State v. Hookfin, 476 So.2d at 493. Furthermore, before a conviction will be reversed on the basis of improper argument, this Court must be convinced that the jury was influenced by the remarks to the extent that the statements contributed to the verdict. State v. Stovall, 439 So.2d 618 (La.App. 1st Cir. 1983).
Nevertheless, despite a lack of contemporaneous objection, extremely inflammatory and prejudicial remarks may require reversal. See State v. Burge, 515 So.2d 494 (La.App. 1st Cir.1987), writ denied, 532 So.2d 112 (La.1988). However, we do not find the prosecutor's remarks to be extremely inflammatory and so prejudicial that they require reversal.
Accordingly, these assignments of error are meritless.

ASSIGNMENT OF ERROR NUMBER THREE:
In this assignment of error, the defendant contends that the trial court erred in restricting his cross-examination of a State witness, Gwendolyn Anderson.
The defendant's right to confront and cross-examine witnesses, found in the Sixth Amendment to the United States Constitution, is a fundamental right applicable to the states through the Fourteenth Amendment. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). This right to confrontation is also found in Art. I, § 16, of the Louisiana Constitution. State v. Rankin, 465 So.2d 679 (La.1985).
It is well-settled law that the defense should be allowed substantial freedom in cross-examining State witnesses. However, such freedom may be restrained by the trial court when the questions asked are irrelevant or immaterial to the case. State v. Mayes, 325 So.2d 591 (La.1976). LSA-R.S. 15:435[1] provides that evidence sought to be introduced at trial must be relevant to a material issue. In questions of relevancy, much discretion is vested in the trial court. State v. Andrews, 451 So.2d 175 (La.App. 1st Cir.), writ denied, 457 So.2d 17 (La.1984). Such rulings will not be disturbed on appeal in the absence of a showing of manifest abuse of discretion. State v. Raymond, 447 So.2d 51 (La. App. 1st Cir.), writ denied, 449 So.2d 1347 (La.1984).
LSA-R.S. 15:275 vests the trial court with "a sound discretion to stop the prolonged, unnecessary and irrelevant examination of a witness." Therefore, a conviction will not be reversed for the trial court's control of the examination of witnesses unless an abuse of discretion is shown. State v. Savoie, 448 So.2d 129 (La.App. 1st Cir.), writ denied, 449 So.2d *1137 1345 (La.1984). Nor will a conviction be overturned where the defendant does not show that he was prejudiced through a limitation of the cross-examination of a witness. State v. Savoie, 448 So.2d at 134; State v. Brown, 432 So.2d 345 (La.App. 1st Cir.1983).
During cross-examination of Ms. Anderson, the defendant tried to establish that there had been family arguments over who would move into the victim's house if the victim and the defendant moved to Florida. However, Ms. Anderson replied that she was aware of no such arguments. It was then established that the victim had one child by the defendant and three other children. When the defendant attempted to ask whether the victim had filed criminal charges against one of the fathers of the other children (later identified by the defendant as Charles Kimball), the prosecutor objected on relevancy grounds, and the jury was removed. Defense counsel argued that, because the defendant had an alibi, the defense believed that someone else shot the victim and it was trying to establish this fact. Defense counsel argued that he should be allowed to explore possible motives which others might have had for killing the victim. The trial court stated that the defendant could not conduct a fishing expedition. The trial court noted that, if charges had been filed, there would be a court record and the proper way to prove the existence of such charges would be to introduce the pertinent court record.
When the jury was returned to the courtroom and cross-examination continued, defense counsel did not ask Ms. Anderson whether or not she was aware of criminal charges being filed against Mr. Kimball. Nor did defense counsel further explore the "family arguments" issue. Therefore, contrary to the defendant's argument, the trial court did not improperly restrict the defendant's cross-examination of Ms. Anderson as to either line of questioning. The defendant simply abandoned both lines of questioning and, therefore, cannot now claim that he was prejudiced through a limitation of his right to cross-examination. In any event, we note that the defendant subsequently testified about alleged family arguments concerning the house and about Mr. Kimball's alleged threats against the victim resulting from her attempt to force him to pay child support. See LSA-C.Cr.P. art. 921; State v. Humphrey, 412 So.2d 507 (La.1981); State v. Clay, 441 So.2d 1227 (La.App. 1st Cir.1983), writ denied, 446 So.2d 1213 (La.1984).
This assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER FOUR:
In this assignment of error, the defendant contends that the trial court erred in allowing the prosecutor to cross-examine the defendant in violation of the attorney-client privilege.
LSA-R.S. 15:475 provides:
No legal adviser is permitted, whether during or after the termination of his employment as such, unless with his client's express consent, to disclose any communication made to him as such legal adviser by or on behalf of his client, or any advice given by him to his client, or any information that he may have gotten by reason of his being such legal adviser.
At the trial, the defendant testified as to an alibi. On the afternoon of the shooting, he was at the park with "Hank" and "Pub." Later, on cross-examination, the defendant explained that he was in the projects with "Pub" until after 11:00 p.m. The defendant testified that he did not know Pub's last name. Thereafter, the prosecutor asked the defendant if he ever gave Pub's name to defense counsel. At this point, defense counsel objected on the basis of the attorney-client privilege. The trial court overruled the objection. The defendant then replied that he had asked his friend, Willie Gulley, to try to find out Pub's last name so that the defendant could give it to defense counsel.
Initially, we note that the prosecutor's question did not reach any privileged communication. Because the identity of Pub was not something revealed to defendant's attorney in confidence, one of the three elements required to establish the attorney-client privilege is lacking. See State v. Vassel, 285 So.2d 221 (La.1973). Furthermore, *1138 the attorney-client privilege usually applies where the attorney, rather than the client, testifies. See State v. Green, 493 So.2d 1178 (La.1986). Finally, as the State correctly notes in its brief to this Court, the defendant's alibi testimony opened the door to this line of questioning on cross-examination. See State v. Vassel, supra.
The defendant also claims that this line of questioning prejudiced him in the eyes of the jury because it illustrated that he did not know Pub's last name. As noted above, the defendant's alibi testimony opened the door to this line of questioning on cross-examination. Furthermore, this claim of prejudice in the eyes of the jury is somewhat confusing since defense counsel indicated in the presence of the jury that a subpoena had been issued for Dwayne "Pub" Collins. However, although the deputy clerk of court indicated that domiciliary service had been made on this subpoena, no such person was present to testify at the trial.
This assignment of error is meritless.
ASSIGNMENT OF ERROR NUMBER SIX:
In this assignment of error, the defendant contends that he is entitled to a new trial because of a prejudicial comment made by the trial court during the defendant's closing argument.
During the defendant's closing argument, the following colloquy occurred:
[DEFENSE COUNSEL:]
They had an obligation to investigate this. They knew that Dwayne "Pub" Collins was an alibi witness. The subpoena was issued on two occasions. The trial was set in September and it was rescheduled for this date, and the State of Louisiana can't even pick that guy up.
[PROSECUTOR:]
Your Honor, at this time I would ask that the jury be removed.
THE COURT:
All right. Retire the jury.
(The jurors left the courtroom.)
After the jury was removed from the courtroom, the prosecutor, defense counsel, and the trial court discussed this objection. The trial court found that defense counsel's remark about the State's failure to produce Dwayne "Pub" Collins for trial was improper. Thereafter, the following colloquy occurred:
THE COURT:
And like I say the remedy is is (sic) to ask for a continuance on the grounds that your witness was summoned, he was served, and wasn't here.
[DEFENSE COUNSEL:]
I would like an instanter attachment.
THE COURT:
I will issue an attachment which I would have been glad to do and we would have delayed the trial until we got him. I suspicion (sic) that you didn't want him here any more than
[DEFENSE COUNSEL:]
I didn't sayI agree.
THE COURT:
Would you return the jury, please.
(The jurors returned to the courtroom.)
In his brief to this Court, the defendant contends that "one can determine that the Trial Judge meant to say that defense counsel didn't want Dwayne "Pub" at the trial any more than the State did." The defendant also contends that the trial court's remark indicated that the trial court's attitude was "clearly prejudicial" to him because the judge had "clearly made up his mind at this point in time."
Initially, we find that, because the trial court did not complete its remark, we cannot ascertain the meaning of this remark. We do not accept the defendant's inference about the meaning of the trial court's incomplete statement: "I suspicion (sic) that you didn't want him here any more than ." Furthermore, the trial court's remark did not violate LSA-C.Cr.P. arts. 770, 771, or 772 because it was not made in the presence of the jury. Finally, we reject the defendant's contention that this remark was evidence that the trial judge was biased and had decided the case against the defendant at this point in the trial. Herein, the jury, not the judge, was the trier of fact. At the time this comment was made by the trial judge, the presentation of evidence *1139 had been completed. Only the completion of closing arguments and the final jury instruction remained before the jury would begin deliberations. The defendant does not point to any specific ruling, or other act by the trial judge, which would demonstrate that the trial judge had become biased against him. We have examined the entire record and are unable to find any indication (be it a ruling, comment, or anything else) that the trial court was biased against the defendant.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER SEVEN:
In this assignment of error, the defendant contends that the evidence was insufficient to support the instant conviction. Initially, we note that, in order to challenge a conviction on the basis of insufficiency of the evidence, the defendant should have proceeded by way of a motion for post-verdict judgment of acquittal. See LSA-C.Cr.P. art. 821. Nevertheless, we will consider a claim of insufficiency of the evidence which has been briefed pursuant to a formal assignment of error. See State v. Tate, 506 So.2d 546 (La.App. 1st Cir.), writ denied, 511 So.2d 1152 (La.1987).
The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt. See LSA-C.Cr.P. art. 821; State v. Johnson, 461 So.2d 673 (La.App. 1st Cir.1984).
LSA-R.S. 14:31 provides, in pertinent part: Manslaughter is:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed;
. . . . .
The defendant's conviction of manslaughter hinged upon a determination of the credibility of the witnesses. The victim was killed at approximately 10:45 p.m. on May 4, 1983. The defendant testified that he was in the projects with "Pub" until after 11:00 p.m. After leaving the projects, the defendant allegedly went to the Touchdown Lounge, Green Acres, and then to a truck stop on Interstate 12, where he subsequently hitchhiked a ride to another truck stop in Jackson County, Mississippi. After spending approximately two and one-half days there, he called his brothers in Florida who picked him up and took him to the police station in Hammond. However, Hammond Police Detective Ernest Lavigne testified that he saw the defendant for the first time on May 14, when the defendant arrived at the station with his two brothers. More significantly, Ms. Anderson testified that she observed the defendant shoot the victim in the head at close range in the front yard of the victim's residence on Harrell Street.
As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31 (La.App. 1st Cir. 1984). Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Richardson, 459 So.2d at 38. In this case, the jury resolved the conflicting testimony in favor of the State's witnesses and rejected the defendant's alibi testimony.
After a careful review of the record, we believe that a rational trier of fact, viewing all of the evidence as favorably to the prosecution as any rational factfinder can, could have concluded that the State proved beyond a reasonable doubt that the defendant *1140 was guilty of manslaughter. See State v. Mussall, 523 So.2d 1305 (La.1988).
This assignment of error is meritless.

ASSIGNMENTS OF ERROR NUMBERS EIGHT AND NINE:
In these assignments of error, the defendant contends that the trial court erred in imposing an excessive sentence and in failing to comply with the sentencing guidelines of LSA-C.Cr.P. art. 894.1.
Although a sentence falls within statutory limits, it may be excessive. State v. Sepulvado, 367 So.2d 762 (La.1979). However, the trial court has great discretion in imposing a sentence within the statutory limits; such a sentence will not be set aside as excessive in the absence of manifest abuse of discretion. State v. Garner, 532 So.2d 429 (La.App. 1st Cir.1988).
This Court has stated that the maximum sentence may be imposed only in cases involving the most serious offenses and worst offenders. State v. Easley, 432 So.2d 910 (La.App. 1st Cir.1983). Manslaughter is punishable by a maximum sentence of twenty-one years at hard labor. See LSA-R.S. 14:31. In the instant case, the defendant received a sentence of twenty years.
However, we do not find this sentence to be excessive. There are good reasons for imposing a sentence of twenty years at hard labor in this case. For instance, the presentence investigation report indicated that the defendant had a prior felony conviction (breaking and entering with intent to commit a misdemeanor) in Florida, as well as several misdemeanor and felony arrests. More significantly the record indicates that the defendant went after the victim as she attempted to escape his wrath. Although she begged for her life, he shot her in the head. A lesser sentence would deprecate the severity of the crime.
The Code of Criminal Procedure sets forth items which must be considered by the trial court before imposing sentence. LSA-C.Cr.P. art. 894.1. The trial court need not recite the entire checklist of Article 894.1, but the record must reflect that it adequately considered the guidelines. State v. Chaisson, 507 So.2d 248 (La.App. 1st Cir.1987).
Before imposing sentence, the trial judge in the instant case merely stated that he had taken into consideration the information contained in the presentence investigation report and had also considered the provisions of LSA-C.Cr.P. art. 894.1. The trial court then imposed sentence and stated that the presentence investigation report was made a part of the instant record.
Although the trial court is required to state the Article 894.1 factors considered in imposing sentence, a sentence imposed without the assignment of reasons will not automatically be set aside on appeal. When the reasons for a severe sentence and its relation to the particular defendant and the actual offense committed appear in the record, a sentence will not be vacated and remanded for resentencing. State v. Danos, 444 So.2d 1269 (La.App. 1st Cir. 1983), writ denied, 445 So.2d 1235 (La. 1984).
Accordingly, we conclude that the record herein clearly indicates that the sentence of twenty years is appropriate for this particular defendant.
AFFIRMED.
NOTES
[1] LSA-R.S. 15:275 and 435 were in effect at the time of the instant trial. However, these provisions were repealed when the new Code of Evidence became effective on January 1, 1989. See Act 515 of 1988.